UNITED STATES of America,
Plaintiff,

v.

Hendrik van der HORST et al.,
Defendants.

Civ. A. No. 2949.

United States District Court
D. Delaware.

July 3, 1967.

Alexander Greenfeld, U. S. Atty., Wilmington, Del., Jerome H. Fridkin, Department of Justice, Washington, D. C., for plaintiff.

Joseph H. Geoghegan, Edward T. Mitchell, Berl, Potter & Anderson, Wilmington, Del., Richard G. Hamon, Blanchette, Smith & Shelton, Dallas, Tex., of counsel, for defendants.

## OPINION

STEEL, District Judge.

Plaintiff, United States of America, instituted this action in order to collect taxes allegedly due from defendants, Hendrik and Catharina van der Horst, formerly husband and wife, to set aside an allegedly fraudulent conveyance by Hendrik to trustees [1] and to foreclose Federal tax liens asserted against the property which Hendrik conveyed. The matter comes before the Court upon plaintiff's motion for summary judgment based upon the pleadings, affidavits and answers to interrogatories. The following facts are not in dispute:

On December 11, 1950 Hendrik became a naturalized citizen of the United States. On May 5, 1958 he left the United States. On May 18, 1959 he and Catharina were legally separated by a final decree in Florida. On July 25, 1959 Hendrik's United States citizenship terminated when upon his own application he re-acquired Netherlands citizenship.

Since 1959 Hendrik has been a resident of Switzerland. Catharina is a resident of Olean, New York. Other defendants are three adult children of Hendrik and Catharina—Johannes,[2] a resident of Olean, New York; Kuno, a resident of Texas, and Rozemarijntje Thingbo, a resident of California—also the Van der Horst Corporation of America, a Delaware corporation with its principal office in Terrell, Texas; Foy B. Fleming, a resident of Florida; Werner L. Scherrer,[3] a resi-

dent of Switzerland, and Zolos Holding, A. G., a resident of Switzerland.

General appearances have been entered by Catharina, Kuno, Rozemarijntje, Johannes, Fleming and Van der Horst Corporation. No appearances have been entered by Hendrik, Zolos Holding, A. G., or Scherrer.

Service upon all non-resident defendants, except Hendrik, was made under 28 U.S.C. § 1655, entitled "Lien Enforcement; absent defendants". An attempt was made to compel the appearance of Hendrik by sequestering 5,000 shares of Preferred Stock of the Van der Horst Corporation held in the name of Johannes and Scherrer, as trustees, on the theory that Hendrik was the beneficial owner thereof because of his allegedly fraudulent transfer of the shares to the trustees.[4] The sequestration was effected under 10 Del.C. § 366, implemented by the Rules of the Court of Chancery of Delaware, Del.C.Ann., which are made applicable to the present proceedings by Federal Rules of Civil Procedure (F.R.C.P.) 4(e) and 64. The time within which all non-appearing defendants were required by law to appear has expired. Thereafter, a default was entered by the clerk under F.R.C.P. 55(a) on May 11, 1965 against Hendrik, and on May 11, 1966 against Scherrer and Zolos Holding, A. G.

On March 17, 1961 plaintiff assessed Federal income taxes and deficiency interest against Hendrik and Catharina, jointly and severally, for the years 1952, 1953, 1954 and 1956, in the total amount of $73,830.42. On the same date plaintiff assessed Federal income taxes and deficiency interest against Hendrik alone for $15,636.58 for the calendar years 1955 and 1957. The total assessments

---

1. The charge in Count II that the trust is invalid under the allegedly controlling law of Switzerland has not been pressed thus far, and will not be dealt with in this opinion.

2. Although Johannes was not named a defendant in his capacity as a trustee, it is apparent from the record that he is being sued in both his individual capacity and as a co-trustee with Scherrer.

3. While Scherrer was not named a defendant in his capacity as a trustee, the record establishes that his only interest in the litigation is as co-trustee with Johannes.

4. See Blumenthal v. Blumenthal, 35 A.2d 831 (Del.Ch.1944), aff'd, 59 A.2d 216 (Del.Sup.Ct.1945).

against Hendrik therefore amounted to $89,467.00 and against Catharina to $73,830.42.

■ The time for attacking these assessments judicially has long since expired. Plaintiff is, therefore, entitled to a judgment against Hendrik and Catharina in the amounts indicated, with interest to date. Since Hendrik has not appeared, the judgment against him is *in rem,* and may be satisfied only out of any interest he may be determined to have in the sequestered property. The judgment against Catharina is *in personam* since she has appeared generally

The fraudulent conveyance charge against Hendrik had its genesis in a final decree of the Circuit Court of the Fifteenth Judicial Circuit of Florida, in and for Broward County, Chancery Action No. 23,012, dated May 18, 1959, and in a Trust Agreement dated August 1, 1960 between Hendrik, as settlor, and Scherrer and Johannes, as trustees. The Florida decree granted Catharina a legal separation from Hendrik, ordered Hendrik to pay Catharina $850.00 a month alimony beginning June 1, 1959, and ordered Hendrik to pay $7,808.18 to Catharina's attorney, the defendant, Fleming.

The Trust Agreement recited the obligations of Hendrik under the Florida decree to Catharina and Fleming, that Hendrik then owed Catharina an accrued total of $13,900 under the decree, and that he also owed $129,218.34 to the Zolos Holding, A. G. It then provided that out of the income and principal of the properties which Hendrik was transferring to the trustees of which the 5,000 shares of Preferred Stock of Van der Horst Corporation was by all odds the most substantial item, the trustees should pay Catharina monthly the sum of $500 "as well as $500 over any month past due", that any excess cash should be applied to discharge the amount due under the decree to Fleming,[5] that after the obligation to Fleming had been paid, the trustee should, to the extent that

they deemed feasible without impairing their ability to maintain the minimum monthly payments of $500 each to Catharina, make additional payments to Catharina up to $350 monthly, with the proviso that in any month for which the trustees paid more than $500 to Catharina, they should pay Zolos Holding, A. G. an amount equal to 30% of the total amount paid that month to Catharina. The dispositive provisions, insofar as relevant, concluded by stating that after Hendrik's obligations to Catharina, Zolos Holding, A. G., and Fleming had been fully discharged, the trustees should pay over the income from the trust to the children of Hendrik and Catharina in equal shares if Hendrik was then living, and the corpus if Hendrik was not then living, or died thereafter.

Under 8 Del.C. § 169 the situs of the Van der Horst Corporation stock is in Delaware. The parties agree that whether Hendrik's transfer of those shares to the trustees constituted a fraudulent conveyance is governed by the Uniform Fraudulent Conveyance Act which Delaware has enacted. Title 6 Del.C. § 1304 deals with "Conveyances by insolvent" and provides:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Plaintiff contends that the conveyance of the Van der Horst stock was fraudulent under Section 1304 in that Hendrik was rendered insolvent by the transfer, and the conveyance was made without a fair consideration.

Title 6 Del.C. § 1302(a) defines insolvency as follows:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be

---

5. Fleming has been paid in full, and has no further interest in the case. An order

dismissing the action with prejudice should be entered as to Fleming.

required to pay his probable liability on his existing debts as they become absolute and matured."

Defendants concede that Hendrik transferred to the trustees all of the assets which he had in the United States. This argument raises the question whether foreign assets, if any there were, may properly be considered in determining Hendrik's insolvency. Defendants make the further contention that the tax claims of the Government were not "existing debts" under 6 Del.C. § 1302(a) at the time of the transfer since they were not assessed until March 17, 1961, some months after Hendrik conveyed the shares to the trustees. Defendants argue that tax claims became an existing debt for the first time when tax assessments were made. These two questions will be considered in inverse order.

In 6 Del.C. § 1301 a "debt" is defined to include "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

■ It would appear to be clear that the correct tax liability became due and owing for purposes of determining insolvency in a fraudulent conveyance action on the date when the tax returns were required to be filed rather than on the date of assessment. Cases which have arisen in contexts not significantly different from the present situation point to this conclusion. See Hartman v. Lauchli, 238 F.2d 881, 887–888 (8th Cir. 1956), cert. denied 353 U.S. 965, 77 S.Ct. 1048, 1 L.Ed.2d 915 (1957); United States v. McCrory, 65–2 USTC ¶ 15647 at 97284 (M.D.Ala.1965). Zeddies v. United States, 357 F.2d 897 (7th Cir. 1966), relied upon by defendants, is inapposite. The fact that under Treas.Reg. § 301.6601–1 interest accrues from the time when the tax return was required to be filed, buttresses the conclusion that the liability is not deferred until time of assessment.

Defendants filed affidavits of Catharina and Kuno which purported to establish that at the time when Hendrik disposed of Van der Horst Corporation stock in 1960 he possessed foreign assets of substantial value in Switzerland and the Netherlands. Kuno's affidavit must be disregarded. His affidavit, verified on April 21, 1967, establishes only the ownership by Hendrik of assets in Switzerland and the Netherlands at the time of the execution of the affidavit. This was almost seven years after the conveyance of the Van der Horst Corporation stock. The date of the conveyance, not the date of the affidavit, is the relevant one.

■ The affidavit of Catharina states that during 1959 and 1960 Hendrik owned "substantial assets" located in the Netherlands among which was stock in Lemet Chromium. The affidavit fails to disclose the source of Catharina's information or what she considers to be "substantial assets". It is of dubious worth under F.R.C.P. 56(e). It may be assumed, however, that Catharina's affidavit, when read in connection with Kuno's statement that his father's shares in Lemet Chromium have a present value in excess of $580,000, gives rise to an inference that at the time when Hendrik transferred his Van der Horst Corporation stock, his Lemet Chromium shares had a value in excess of his liabilities. Nevertheless, the Lemet Chromium shares may not, as a matter of law, be considered in determining the question of Hendrik's insolvency in August of 1960.

Section 1301 of 6 Del.C. defines "assets" as:

"[P]roperty not exempt from liability for his debts; and to the extent that any property is liable for any debts of the debtor, such property shall be included in his assets * * *."

The defendants argue that property in the Netherlands belonging to Hendrik was liable for his debts.

■ It is a general rule of international law that in the absence of a treaty provision, one country will not

enforce tax claims of another country. Newcomb v. Commissioner of Internal Revenue, 23 T.C. 954, 960 (1955); Government of India v. Taylor, [1955] 1 All Eng.L.Rep. 292 (H.L.1955). Defendants recognize this. They argue, however, that the United States and the Netherlands entered into a tax convention on April 29, 1948 which provides that the country to which the tax is owing may secure the assistance of the other country in the collection of the tax. Article XXII paragraphs 1–4 read:

"(1) The Contracting States undertake to lend assistance and support to each other in the collection of the taxes which are the subject of the present Convention, together with interest, costs, and additions to the taxes and fines not being of a penal character.

(2) In the case of applications for enforcement of taxes, revenue claims of each of the Contracting States which have been finally determined may be accepted for enforcement by the other Contracting State and collected in that State in accordance with the laws applicable to the enforcement and collection of its own taxes. The State to which application is made shall not be required to enforce executory measures for which there is no provision in the law of the State making the application.

(3) Any application shall be accompanied by documents establishing that under the laws of the State making the application the taxes have been finally determined.

(4) The assistance provided for in this Article shall not be accorded with respect to the citizens, corporations, or other entities of the State to which application is made, except as is necessary to insure that the exemption or reduced rate of tax granted under the convention to such citizens, corporations or other entities shall not be enjoyed by persons not entitled to such benefits."

In 1960 when Hendrik transferred his Van der Horst stock this provision was of no aid to the plaintiff. By the express terms of Article XXII paragraph (2) plaintiff could not have applied to the Netherlands for the enforcement of its tax claims before they had been "finally determined". While this expression seems not to have been judicially interpreted, it is manifest that there could not have been any final determination of the taxes prior to the assessment of the claims on March 17, 1961, at the very earliest; and possibly there would have been no "final determination" until the time for seeking judicial review had passed, or, if it had been sought, until the litigation had been concluded.

Furthermore, paragraph 4 of Article XXII makes it clear that the Netherlands was not empowered to assist the plaintiff in collecting its tax against a Netherlands citizen as was Hendrik, except under circumstances which for present purposes are irrelevant.

Finally, it is to be noted that the convention does not make it obligatory for the Netherlands to render aid to the plaintiff in collecting taxes; its duty is discretionary only. See Supplemental Statement, dated April 24, 1951, by Special Deputy Commissioner Eldon P. King, Bureau of Internal Revenue, in Support of the Collection of Tax Provisions of Proposed Tax Conventions, particularly paragraphs numbered 2 and 3 on the last page of the report; 1 Legislative History of United States Tax Conventions 580.

Assuming, *arguendo*, that the record discloses that Hendrik had assets in Switzerland when he conveyed his shares in Van der Horst Corporation to the trustees—which it does not—the treaty between Switzerland and the United States, signed on May 24, 1951, concerning the collection of taxes is irrelevant. Article XVI paragraph (2) upon which defendants rely provides:

"(2) Each of the contracting States may collect such taxes imposed by the

other contracting States as though such taxes were the taxes of the former State as will ensure that the exemption or reduced rate of tax granted under Articles VI, VII, VIII and XI(2), of the present Convention by such other State shall not be enjoyed by persons not entitled to such benefits."

So far as the record discloses there is nothing to show that Hendrik's tax liabilities arose out of a wrongful claim by him of either a tax exemption or a reduced rate of tax granted under any of the provisions of the Swiss convention.

■ In summary, the transfer by Hendrik of the 5,000 shares of Preferred Stock of Van der Horst Corporation to the trustees rendered Hendrik insolvent within the meaning of 6 Del.C. § 1304.

The question remains whether the conveyance was made without a fair consideration, the second factor to be considered in determining whether the conveyance was fraudulent under 6 Del.C. § 1304.

Title 6 Del.C. § 1303 prescribes the conditions under which fair consideration is given for property conveyed. Paragraph (2) reads:

"When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

■ It is conceded that the remaindermen under the trust, Kuno, Rozemarijntje and Johannes, gave no consideration for their interests. Consequently, the Government is entitled to have the conveyance of their interests set aside and to have a lien imposed upon their remainder interests.

■ The question whether fair consideration was given by Catharina, the life tenant, must be litigated. It is impossible to say at this juncture that on the fair consideration question as it relates to Catharina there is no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law. See affidavits of Catharina and Fleming. The issue to be litigated will be the narrow one whether Catharina's interest in the conveyed shares was received by her in good faith to secure an antecedent debt owed to her by Hendrik, the amount of which was not disproportionately small to the value of the property conveyed.

This leaves open the question of what relief, if any, should be accorded at this time against Zolos Holding, A. G. or Scherrer. As stated, default has been entered against these defendants by the clerk. As yet, however, plaintiff has not moved for the entry of a default judgment as F.R.C.P. 55(b) contemplates. Although the motion for summary judgment seeks relief against all defendants, the Court is reluctant to determine at this time that the conveyance by Hendrik of his Van der Horst stock was fraudulent as to Zolos Holding, A. G. in view of the recital in the Trust Agreement that Hendrik was then indebted to that company in the amount of $129,218.34. Nor can it be determined on the present record whether this indebtedness, if in fact it existed, was disproportionately small to the value of the Van der Horst shares conveyed. Perhaps upon an application by plaintiff for default judgment against Zolos Holding, A. G. it may be determined that the conveyance was fraudulent as to that company upon the basis of the default alone without the consideration of additional evidence. This, however, is a question which has not been discussed, and the Court is, therefore, not disposed to resolve it at this time.

Whether or not the interest in the conveyed shares of Scherrer and Johannes, in their capacity as trustees, should be subjected to a lien in favor of the Government may depend, at least to some extent, upon whether the conveyance of Catharina's interest in the

stock or that of Zolos Holding, A. G. was fraudulent.

By examining the pleadings and the evidence and by interrogating counsel, for the reasons heretofore stated, the following material facts exist without substantial controversy and are not subject to further litigation:

(1) Plaintiff is entitled to an *in rem* judgment against Hendrik in the total amount of $89,467.00, with interest to date, satisfiable only out of the interest Hendrik fraudulently conveyed, as determined herein or hereafter;

(2) Plaintiff is entitled to an *in personam* judgment against Catharina in the amount of $73,830.42, with interest to date;

(3) Hendrik was rendered insolvent by the transfer to the trustees in 1960 of the 5,000 shares of Preferred Stock of Van der Horst Corporation;

(4) The interest which Kuno, Rozemarijntje, and Johannes acquired in the stock was obtained without a fair consideration;

(5) The conveyance to Kuno, Rozemarijntje and Johannes of their interest in the stock was fraudulent as to the creditors, including the plaintiff, and should be set aside;

(6) Plaintiff is entitled to a lien upon the interest in the stock conveyed to Kuno, Rozemarijntje, and Johannes.

Remaining to be determined are the questions whether:

(1) The interest which Zolos Holding, A. G. acquired in the conveyed shares was for a fair consideration;

(2) The interest which Catharina acquired in the conveyed shares was for a fair consideration;

(3) The relief, if any, which should be granted against Zolos Holding, A. G., Catharina, and Scherrer and Johannes in their capacity as trustees, in so far as the interests in the shares of Zolos Holding, A. G. and Catharina are concerned.

Let an order be submitted consistent with the foregoing opinion.