806 F.2d 442
 123 L.R.R.M. (BNA) 3193, 55 USLW 2343
 Paul H. ROBINSON, Clifford Owens, Paul B. Kelly, Allan Roth,
Calvin W. Corman, Earl Maltz, Elihu Abrahams, Arnold Glass,
Charles W. Uptom, Alex W. Wypyszinski, Michael Crew, Harold
Zapolsky and Jackson Toby
v.
STATE OF NEW JERSEY, Thomas H. Kean, Governor, James W.
Mastriani, Chairman, Public Employment Relations Commission,
Edward J. Bloustein, President and Individually, Rutgers
State University, Rutgers University, Rutgers University,
Board of Governors, State Dept. of Higher Education, Mr.
James A. Gormley, Director of Personnel and Individually,
Rutgers University (Camden), Christine Mowry, Director of
Office of Employee Labor Relations & Ind., Rutgers Council,
AAUP and Ms. Sandra Walther, Executive Director, Rutgers
Council, American Association, Richard Laity, Chairman, and
Individually, AAUP Legislative Relations Committee, AAUP and
Irvin J. Spitzberg, Jr., General Secretary AAUP, Richard
Peskin, President and Individually, Rutgers Council of AAUP
(D.C.Civil No. 82-1118).
Joseph W. ANTONACCI, Meveril Jones, Thomas Gay, John
Russell, Richard H. Trexler, A. William Onder,
Leon Matelski, Edward Jakubco, Mrs.
Dorothy Gray and William F. Gray
v.
STATE OF NEW JERSEY, Thomas H. Kean, Governor, James W.
Mastriani, Chairman, Public Employment Relations Commission,
Westfield Education Association, Sally Vejnoska, President
and Individually, Union County Education Association,
Westfield Board of Education, Dr. L.F. Greene,
Superintendent and Individually, Robert Westkerna, Pascack
Valley Regional Education Association, David T. Dierker,
President and Individually, Bergen County Education
Association, Pascack Valley Regional Board of Education,
Mrs. Laurie Thorton, President and Individually, Edison
Township Board of Education, Aurora Bernard-Salit, President
and Individually, Middlesex County Education Association,
Varia Versocki, President and Individually, Edison Township
Board of Education, Charles A. Boyle, Superintendent,
Ridgewood Education Association, Frank Sidoti, President and
Individually, Ridgewood Board of Education, Rosemarie
Schutt, President and Individually, Township of Ocean Board
of Education, James F. Jeffries, President and Individually,
New Jersey Education Association, Edith Fulton, President
and Individually, National Education Association, Williard
H. McGuire, President (D.C.Civil No. 82-1119).
Allen OLSEN, William Anderson, Peter Yull, Larry Lang, Fred
S. Smartt, and William J. Harrington
v.
COMMUNICATIONS WORKERS OF AMERICA (CWA), Glenn E. Watts, CWA
District One, CWA Locals 1031, 1032, 1033, 1034,
1037, 1038, 1039, 1040 and State of New
Jersey, Thomas H. Kean, Governor.
Appeal of Paul H. ROBINSON, Clifford Owens, Paul B. Kelly,
Allan Roth, Calvin W. Corman, Earl Maltz, Elihu Abrahams,
Arnold Glass, Charles W. Upton, Alex W. Wypyszinski, Michael
Crew, Harold Zapolsky and Jackson Toby, Appellants (Civil
No. 82-1118).
Appeal of Joseph W. ANTONACCI, Meveril Jones, Thomas Gay,
John Russell, Richard H. Trexeler, A. William Onder, Leon
Matelski, Edward Jakubco, Mrs. Dorothy Gray and William F.
Gray, Appellants (Civil No. 82-1119).
Appeal of Allen OLSEN, William Anderson, Peter Yull, Larry
Lang, Fred S. Smartt and William J. Harrington,
Appellants (Civil No. 82-3443).
 No. 85-5669.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 29, 1986.
Decided Nov. 28, 1986.
Rehearing and Rehearing En Banc Denied Jan. 14, 1987.
 
 Hugh L. Reilly (argued), National Right to Work Legal Defense Foundation, Inc., Springfield, Va., Jeffry A. Mintz, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Cherry Hill, N.J., for appellants.
 James B. Coppess, Adair, Scanlon & McHugh, Washington, D.C., Ann H. Franke, American Association of University Professors, Washington, D.C., Robert H. Chanin, Bruce R. Lerner, Bredhoff & Kaiser, Washington, D.C., Paul Schachter, Reinhardt & Schachter, Newark, N.J., Laurence Gold (argued), Washington, D.C., Steven P. Weissman, Trenton, N.J., Richard A. Friedman, Ruhlman, Butrym & Friedman, Pennington, N.J., of counsel), for appellee.
 Before ADAMS, HIGGINBOTHAM and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This case presents a constitutional challenge to the 1979 amendment of the New Jersey Employer-Employee Relations Act ("the Act"), N.J.S.A. 34:13A-5.1 et seq., which allows public employers and public employee unions to include in collective bargaining agreements a requirement that employees who do not join the union must pay a representation fee in lieu of union dues in order to share in the costs of collective bargaining. Appellants, public employees in New Jersey who choose not to become union members, argue that the Act violates their first amendment right not to be required to support political positions with which they disagree.
 
 
 2
 * Public employees in New Jersey have had the right to bargain collectively with the state as employer since 1968. N.J.S.A. 34:13A-5.3. Because public employee unions are required to represent the interests of all members of the bargaining unit, those workers who do not join such unions would, in the absence of some special arrangement, receive the benefits of collective bargaining without sharing in its costs. To ameliorate this situation, legislation was enacted in 1979 allowing public employers and public employee unions to provide in collective bargaining agreements that employees who do not join the union must pay a representation fee in lieu of union dues. See Sponsor's Statement to L.1979, c. 477, N.J.S.A. 34:13A-5.5 to 5.9. The Act sets a limit on the amount of the representation fee that may be collected, stating that the fee
 
 
 3
 shall be in an amount equivalent to the regular membership dues, initiation fees and assessments charged by the majority representative to its own members less the cost of benefits financed through the dues, fees and assessments and available to or benefitting only its members, but in no event shall such fee exceed 85% of the regular membership dues, fees and assessments.
 
 
 4
 N.J.S.A. 34:13A-5.5(b). The Act further refines this formula by allowing fees to be exacted for
 
 
 5
 the costs of support of lobbying activities designed to foster policy goals in collective negotiations and contract administration or to secure for the employees represented advantages in wages, hours, and other conditions of employment in addition to those secured through collective negotiations with the public employer.
 
 
 6
 N.J.S.A. 34:13A-5.5(c).
 
 
 7
 The legislation anticipates that at times unions may collect more in representation fees than they are entitled to under the foregoing provisions, and that some workers may object to being required to pay such overages. It therefore establishes a "demand and return" system, which offers such workers the right to receive a refund in the amount of the overcharge. The refund is limited to that part of the fee paid
 
 
 8
 which represents the employee's additional pro rata share of expenditures by the majority representative that is either in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment or applied toward the cost of any other benefits available only to members of the majority representative.
 
 
 9
 Id. The demand and return system must include a procedure "by which persons who pay a representation fee in lieu of dues may obtain review of the amount returned through full and fair proceedings placing the burden of proof on the majority representative." N.J.S.A. 34:13A-5.6. An employee who is dissatisfied with this review arrangement is entitled to appeal to a board consisting of three members appointed by the Governor. The membership of the appeal board is prescribed:
 
 
 10
 Of such members, one shall be representative of public employers, one shall be representative of public employee organizations and one, as chairman, who shall represent the interest of the public as a strictly impartial member not having had more than a casual association or relationship with any public employers, public employer organizations or public employee organizations in the 10 years prior to appointment.
 
 
 11
 Id.
 
 
 12
 Appellants here, public employees who are not union members, initially challenged various aspects of the Act on constitutional grounds in three separate lawsuits. Initially, the district court found that the Act violates the first amendment by allowing representation fees to be used to support lobbying by the union in furtherance of policy goals not directly related to collective bargaining. It also held that a demand and return system of the sort authorized by the Act cannot adequately protect the first amendment rights of dissenting employees, and that the demand and return procedures established in the collective bargaining agreements in question were so unwieldy as to infringe the appellants' right to due process. The district court entered injunctions against the collection of all representation fees from objecting employees. Robinson v. New Jersey, 547 F.Supp. 1297 (D.N.J.1982); Olsen v. Communications Workers of America, 559 F.Supp. 754 (D.N.J.1983); Robinson v. New Jersey, 565 F.Supp. 942 (D.N.J.1983).
 
 
 13
 The consolidated cases were appealed to this Court, which reversed the district court. In Robinson v. New Jersey, 741 F.2d 598 (3d Cir.1984), we held that the first amendment is not abridged either by the Act's allowance of the use of representation fees to finance lobbying of the sort disapproved by the district court or by the demand and return scheme. Id. at 609-12. We further held that the demand and return systems implemented by the defendant unions would be susceptible to constitutional challenge only if in practice they allowed the union to expend representation fee funds for prohibited purposes. Finally, we remanded to the district court for the necessary factfinding. Id. at 612-14.
 
 
 14
 On remand, the district court upheld the Act. It rejected the appellants' claims that allowing use of representation fee funds for lobbying other than in support of collective bargaining goals and the demand and return system facially violate the first amendment, noting that these issues had already been determined by this Court. JA 32-36. The district court then proceeded to several other issues. It held that the composition of the appeal board established by the Act does not violate due process requirements, JA 46, but declined to adjudicate appellants' claims relating to the validity of the demand and return schemes as applied, electing to abstain under the Pullman doctrine. JA 61-68.II
 
 
 15
 In the present appeal the appellants raise three principal issues. First, they maintain that the Act's demand and return scheme facially violates the first amendment, relying on the Supreme Court's recent holding in Chicago Teachers Union, Local No. 1 v. Hudson, --- U.S. ----, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Second, they contest the district court's determination to abstain from deciding their as-applied challenge to the demand and return systems established by the union appellees. Third, they challenge the composition of the appeal board on due process grounds.
 
 A.
 
 16
 Appellants do not argue that the collection of representation fees by a public employee majority representative is unconstitutional, nor could they. In Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the Supreme Court considered the constitutionality of a Michigan statute authorizing the collection of representation fees from public employees who do not join their union. Relying heavily on its earlier decisions in Railway Employes' Department v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), and International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 784, 6 L.Ed.2d 1141 (1961), the Supreme Court held that the first amendment does not forbid the collection of such fees, even from employees who do not support unionism, so long as the proceeds are used in support of "collective bargaining, contract administration, and grievance adjustment." 431 U.S. at 225-26, 97 S.Ct. at 1794-95.
 
 
 17
 The appellants insist that the Act facially infringes the first amendment by failing to provide sufficient procedural protections to employees who do not belong to the union and do not want their representation fees to be used to support the union's political positions. In this regard, they rely exclusively on Chicago Teachers Union, Local No. 1 v. Hudson, supra, in which the Supreme Court considered a challenge to the procedures for collecting representation fees embodied in a collective bargaining agreement between the Chicago Teachers Union and the Chicago Board of Education. These procedures were adopted pursuant to an Illinois statute similar in purpose to the New Jersey Act. The Court found the union's procedure constitutionally defective in three respects. First, the procedure for returning to dissenting nonmembers excess fees assessed was insufficient to ensure that dissenters' funds would not be used for an improper purpose. Id., 106 S.Ct. at 1075. Second, the union failed to supply nonmembers with information justifying the amount of fees it assessed. Id. Third, the arrangement did not include a fair, expeditious, and objective procedure for addressing the objections of nonmembers. Id. at 1076-77.
 
 
 18
 Exclusive reliance by the appellants on Hudson in their facial attack on the Act is misplaced. Hudson involved not a facial attack upon the Illinois statute, but only a challenge to the procedures actually adopted in a specific collective bargaining agreement. The effect of the Court's holding was to disallow the collection of representation fees under the regime established in that collective bargaining agreement. The statute itself, however, was left standing.
 
 
 19
 It is well established that the courts will not invalidate a statute on its face simply because it may be applied unconstitutionally, but only if it cannot be applied consistently with the Constitution. Thus in Members of the City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 722 (1984), the Supreme Court explained that there are two different contexts in which a statute may be declared facially invalid: "either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.' " Id. at 796, 104 S.Ct. at 2124. A holding that invalidates a statute in the first situation "expresses the conclusion that the statute could never be applied in a valid manner." Id. at 797-98, 104 S.Ct. at 2125. The New Jersey Act clearly does not fall into this category. It does not mandate procedures that result in a union enjoying temporary use of funds to which it is not entitled; it does not forbid a union to provide nonmembers with a justification of its fee assessments; and it does not prevent the establishment of an adequate appeal procedure.
 
 
 20
 Our conclusion that the Act is susceptible of a construction making its application constitutional is buttressed by In re Board of Education of Boonton, 99 N.J. 523, 494 A.2d 279 (1985), cert. denied, --- U.S. ----, 106 S.Ct. 1388, 89 L.Ed.2d 613 (1986). In Boonton, the New Jersey Supreme Court considered a constitutional challenge to the Act as applied. The court proceeded from the premise that the Act must be construed so as to make it consistent with constitutional requirements. Id. 494 A.2d at 292. It concluded, among other things, that the Act requires a union to base the amount of the representation fee it assesses on its expenditures during the previous year, in order to minimize the possibility that the union will be allowed temporary use of the fee funds for impermissible purposes. Id. at 293-94. This construction arguably meets the first of the three requirements set forth in Hudson: namely, that the union " 'should not be permitted to exact a service fee from nonmembers without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining.' " Hudson, 106 S.Ct. at 1075 (quoting Abood v. Detroit Board of Education, 431 U.S. 209, 244, 97 S.Ct. 1782, 1804, 52 L.Ed.2d 261 (1977)).
 
 
 21
 We do not pass on the issue whether the Act, as construed in Boonton, satisfies the Hudson requirement that the demand and return system be so designed that the union is prevented from enjoying unwarranted use of representation fee funds. However, we believe, that the fact that the Act is capable of supporting such a construction bolsters the determination that the Act does not require a demand and return system that violates the first amendment rights of dissenting nonmembers.
 
 
 22
 Further, the appeal board has proposed rules implementing the Act that are explicitly designed "[t]o satisfy the mandates of the United States Supreme Court in [Hudson ], and the New Jersey Supreme Court in Boonton." Summary of Proposed Rules, reprinted in Brief for Appellee at app. 2. The proposed rules address all three of the infirmities uncovered in Hudson, and arguably result in an implementation of the Act that is in full compliance with constitutional requirements. Like the holding in Boonton, the promulgation of these rules supports the holding that the Act can be implemented without running afoul of constitutional strictures.
 
 
 23
 It is equally clear that the doctrine of overbreadth is not applicable here. A statute may be struck down as overbroad if it has a substantial chilling effect on free expression, even though the conduct of the party raising the challenge may be unprotected. The doctrine "is predicated on 'a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.' " Taxpayers for Vincent, 466 U.S. at 799, 104 S.Ct. at 2126 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). Because the statute in question threatens no sanctions, there does not appear to be any question of a chilling effect on expressive activity.
 
 
 24
 In assessing the facial constitutionality of a statute, courts often take the further step of setting forth a construction of the statute that avoids the constitutional issue. See, e.g., Ellis v. Brotherhood of Railway, Airline & Steamship Clerks, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984); Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); United States v. C.I.O., 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948); Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). In these cases the issue was the constitutionality of a federal statute. Where, as here, the inquiry concerns a state statute, somewhat different considerations come into play. A federal court is unable to set forth a definitive construction of a state statute: in the nature of things, any such construction is only tentative, at best a forecast, subject to override by the courts of the state. See Railroad Commission v. Pullman Co., 312 U.S. 496, 499-500, 61 S.Ct. 643, 644-45, 85 L.Ed. 971 (1941); Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1085 (1974) ("When federal courts decide questions of state law, ... there is no possibility of any review within the authoritative state judicial system of their prediction of how state tribunals would rule."). In deference to this primary role of the state judiciary, the district court exercised its discretion to abstain from deciding appellants' as-applied claims, thereby refraining from a tentative construction of the Act. In light of our determination that the district court acted within its discretion in abstaining, it would be inappropriate for us to undertake to construe the Act in assessing its facial constitutionality. It is sufficient in deciding this issue to note that the Act is not "unconstitutional in every conceivable application." Taxpayers for Vincent, 466 U.S. at 796, 104 S.Ct. at 2124.
 
 B.
 
 25
 The district court declined to pass on appellants' as-applied claims, electing to abstain on the basis of the doctrine announced in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Appellants argue that abstention was unwarranted. Under Pullman and a long line of subsequent cases, a federal court has the discretion in certain circumstances to avoid deciding a case that is properly before it. In Georgevich v. Strauss, 772 F.2d 1078, 1089 (3d Cir.1985) (in banc), cert. denied, --- U.S. ----, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986), we explained:
 
 
 26
 Pullman abstention is appropriate whenever "there is an unsettled question of state law, the resolution of which would affect the decision of a federal constitutional issue, either by obviating the need to decide it or by changing the light in which it must be viewed."
 
 
 27
 (quoting Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743, 746 (3d Cir.1982)). An appellate court may reverse a district court's decision to abstain only for abuse of discretion. Frederick L. v. Thomas, 557 F.2d 373, 382 (3d Cir.1977). We conclude that in this case there was no abuse of discretion.
 
 
 28
 Appellants' as-applied claims are based entirely upon the Supreme Court's holding earlier this year in Hudson. The Court there set forth the features that a statute authorizing the assessment of representation fees must have in order to pass constitutional muster, namely: it must require that the union provide an adequate explanation of the basis for the fee assessed, that dissenting nonmembers be provided with a reasonably prompt opportunity to challenge the fee before an impartial decisionmaker, and that there be a procedure for assuring that fee funds are not used even temporarily by the union for improper purposes. 106 S.Ct. at 1075-78. The New Jersey Supreme Court has declared in Boonton its intention to construe the Act so as to make it consistent with constitutional requirements, Boonton, 494 A.2d at 292, and the New Jersey courts have not decided a case under the Act since Hudson was decided. An unsettled issue of state law is thus presented: What set of procedures does the state statute require to be followed in the implementation of a collectively bargained agreement to collect representation fees from nonmembers? The Act is largely silent as to the procedures to be followed in implementing it, and is therefore " 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal constitutional question." Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (quoting Harman v. Forssenius, 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965)). The propriety of abstention by the district court is enhanced by the fact that there is as yet no substantial body of caselaw treating the provisions in question. Only in Boonton have the New Jersey courts addressed these provisions, and that decision leaves open a number of the issues that concern us on this appeal.
 
 
 29
 As discussed above, the appeal board has proposed a set of administrative rules implementing the Act that are designed to codify the requirements of Hudson and Boonton. Brief for Appellees at 21, app. 1-19.[1] If these proposed rules are adopted, they may well constitute an implementation of the Act that makes applications of it comport with the restrictions set forth in Hudson. In such event, the need for a constitutional adjudication would be eliminated or, at the very least, its scope substantially narrowed. The state is thus embarked on a process aimed at implementing the Act in a constitutional manner. That the state is aware of and acting in good faith upon its constitutionally imposed duties in this regard counsels the federal courts against undertaking "a tentative answer which may be displaced tomorrow by a state adjudication" and which may result in "needless friction with state policies." Pullman, 312 U.S. at 500, 61 S.Ct. at 645.
 
 
 30
 Appellants point out that the defendants did not move for abstention until more than two-and-a-half years after the actions were originally filed in the district court. We have held that such a delay is a factor weighing against abstention. See Frederick L. v. Thomas, supra, 557 F.2d at 383. Although the duration of the delay here is of some concern, we do not deem it of sufficient import to render the district court's decision to abstain an abuse of discretion. In the context of a decision to abstain, the significance of a delay derives from the harm it causes to the party seeking vindication of his or her rights. In Frederick L., delays in adjudication meant that children suffering from serious learning disabilities would be further deprived of educational opportunities that could never be fully restored to them. In this case we do not consider the potential harm to appellants to be of the same magnitude.
 
 
 31
 Moreover, it appears unlikely that resolution of the dispute has been greatly postponed as a result of the delayed filing of the motion for abstention. In its initial round of hearings in 1982 and 1983, the district court held that the Act was facially invalid. That holding occasioned an appeal to this Court in which we reversed the facial invalidation and remanded for consideration of the as-applied claims. Our earlier judgment was rendered on August 6, 1984, nearly two years after the suits were initially filed. Thus nearly two years of the delay in filing the motion for abstention was of no consequence, since a decision to abstain from deciding the as-applied claims prior to the remand would not have affected the district court's disposition of the case.
 
 
 32
 We note further that the district court, although abstaining from decision at the present time, retains jurisdiction over the action. Should the appellants experience undue delay in obtaining resolution of the unsettled state-law issues, they would have the right once again to request that the district court move forward. See Georgevich, supra, 772 F.2d at 1093. In addition, appellants have the right to return to the federal courts should a federal constitutional issue remain after resolution of the state-law issues. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 415-17, 84 S.Ct. 461, 464-66, 11 L.Ed.2d 440 (1964).
 
 
 33
 In sum, there is presently in motion a process that may well result in an interpretation of the Act that will narrow or eliminate the need for any constitutional adjudication. In addition, the Act is fairly susceptible of a construction that will obviate the necessity to address a constitutional issue. Consequently, we cannot say that the district court abused its discretion in abstaining from deciding appellants' as-applied claims.
 
 C.
 
 34
 There is provision in the Act for the formation of an appeal board whose function is to review determinations by the union under the demand and return system. The board, consisting of three members, is to be appointed by the Governor. "Of such members, one shall be representative of public employers, one shall be representative of public employee organizations and one, as chairman, who shall represent the interest of the public as a strictly impartial member...." N.J.S.A. 34:13A-5.6. Appellants maintain that the composition of the board violates their right to procedural due process. They argue that the representatives of the union and of the employer will constitute a voting bloc unconstitutionally biased against employees who do not join the union.
 
 
 35
 The Supreme Court has not been quick to find that an adjudicator's potential bias against one whose cause he or she hears rises to the level of a constitutional violation. In Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), the Court noted that the probability of bias on the part of an adjudicator is intolerably high when the adjudicator has a pecuniary interest in the outcome, and when he or she has been the target of personal abuse or criticism from the litigant. In our case there is no suggestion that either of these conditions exists.
 
 
 36
 In addition, the Court has stated that, in the absence of pecuniary interest or personalized animus, evidence of a generalized bias may be sufficient to establish a constitutional violation, but "only in the most extreme of cases." Aetna Life Insurance Co. v. Lavoie, --- U.S. ----, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986). The present situation hardly exemplifies such an extreme case. The Act requires that one of the board members be without institutional affiliations, and hence presumptively impartial. Of the other two members, one is to represent the unions and the other is to represent employers. Even if one assumes arguendo that the union representative is likely to be biased against employees who choose not to join the union, such assumed bias would be counterbalanced by the employer representative, who would probably be more sympathetic to the employees' position. The union is often the employer's adversary at the bargaining table, and the employer is bound to perceive anything that strengthens the union financially to be contrary to its interests. Thus it is difficult to see any bias at all in the composition of the board. Certainly it is not such as to make this "the most extreme of cases."
 
 
 37
 Furthermore, in Hudson the Supreme Court hinted that a review board would pass constitutional muster as long as its membership was not controlled by the union alone. The Court invalidated the three-tier review system under attack in Hudson. The first two tiers were composed entirely of union officials, while the third offered review by a union-selected arbitrator. Thus the union exercised unrestricted control of the composition of all stages of the review process. In holding this system violative of due process requirements, the Court noted that "a full-dress administrative hearing" was not required, and that the impartiality requirement might be satisfied "so long as the arbitrator's selection [does] not represent the Union's unrestricted choice." 106 S.Ct. at 1077 n. 21. While this statement is dictum, it confirms the rigor of the standard set forth in Aetna Life, supra.
 
 III
 
 38
 For the foregoing reasons, the judgment of the district court will be affirmed, and the case remanded to the district court with instructions to retain jurisdiction pending resolution of the state-law issues. See Lake Carriers' Association v. MacMullan, 406 U.S. 498, 512-13, 92 S.Ct. 1749, 1758-59, 32 L.Ed.2d 257 (1972); Insurance Federation of Pennsylvania, Inc. v. Supreme Court of Pennsylvania, 669 F.2d 112, 113 (3d Cir.1982) (per curiam).
 
 
 
 [1]
 A public hearing on the proposed rules was held on September 11, 1986, and comments were received. On the basis of these comments, the appeal board has made changes in the proposed rules of a substantive nature. The aim, however, remains to implement the Act consistently with the requirements of Hudson. There will probably be another round of comments before the New Jersey Public Employment Relations Commission decides whether to adopt the revised rules. We were advised at oral argument that the process is expected to proceed to resolution with reasonable expedition