**In the Matter of Carter Thomas Gorham KUEHN, challenger, Relator,**

**v.**

**AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, COUNCIL NO. 65, HIBBING, MINNESOTA.**

No. C2–88–1779.

Court of Appeals of Minnesota.

Jan. 31, 1989.
Review Denied April 19, 1989.

---

**1.** *Christy v. Saliterman,* 288 Minn. 144, 179 N.W. 2d 288, 289 (1970).

Darel F. Swenson, Wayzata, for relator.

Gregg M. Corwin, Linda Marie Nelson, AFSCME, Council 65, St. Louis Park, Thomas A. Fitzpatrick, County of Crow Wing, Brainerd, Hubert H. Humphrey, III, Atty. Gen., Martha J. Casserly, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by SCHUMACHER, P.J., and PARKER and SHORT, JJ.

SHORT, Judge.

## OPINION

Relator Carter Thomas Gorham Kuehn appeals the Public Employment Relations Board's decision regarding the procedures used by respondent American Federation of State, County and Municipal Employees in assessing fair share fees pursuant to Minn.Stat. § 179A.06, subd. 3 (1986). We affirm the Board's decision and hold that Minn.Stat. § 179A.06, subd. 3 is constitutional on its face and as applied.

## FACTS

Relator Carter Thomas Gorham Kuehn began working at the Department of Planning and Zoning Office of Crow Wing County in Brainerd, Minnesota in September, 1985. Respondent American Federation of State, County and Municipal Employees, Council 65, Local 689A ("Council 65" or "the Union") is the certified representative for a bargaining unit of approximately fifty-four employees of the County of Crow Wing. Kuehn is one of three members of the bargaining unit who is not a member of Council 65.

Kuehn received a notice dated August 26, 1986 which stated that Council 65 required the Auditor of Crow Wing County to deduct a fair share fee of $14.96 per month from Kuehn's earnings starting with "the first payroll period following receipt of * * * the notice." A "fair share fee" is a fee that a union certified to negotiate with the employer on behalf of all employees in the appropriate unit may charge employees who are not members of the union. This fee constitutes the nonmember's fair share of services rendered by the unions. A copy of the notice also was sent to the Bureau of Mediation Services ("BMS").

The auditor's first fair share fee deduction was taken from the paycheck Kuehn received on September 12, 1986. On September 15 Kuehn wrote a letter to both the Union and BMS asking that the Union provide him with a detailed breakdown of the Union's expenditures. In his letter Kuehn also requested that his employer escrow Kuehn's fair share fee. On September 25 Kuehn filed a formal challenge to the fair share fee assessment with BMS. On October 2, BMS ordered the Crow Wing County Auditor to "hold in escrow any deductions of a fair share fee for *Carter Thomas Gorham Kuehn* pending a decision by the Director of the Bureau of Mediation Services."

On October 6 the Union replied to Kuehn's request by providing him with the amount of the regular dues of AFSCME and Council 65 and the fair share fee calculation. The Union also included a copy of the Council 65 financial statement showing the audited expenses from January 1, 1985

through December 31, 1985, as well as other Council 65 information, and the AFSCME International financial statement for the fourth quarter of 1985.

BMS scheduled a hearing on Kuehn's fair share fee challenge for March 3, 1987. The hearing was continued to April 20 and 21, 1987. On December 4, 1987, BMS found the August notice to be insufficient and ordered that Council 65 refund Kuehn any deductions made prior to October 6, 1986. BMS further held that AFSCME's procedures used with the October 6 notice were proper.

Kuehn appealed the BMS decision to the Public Employment Relations Board ("PERB") pursuant to Minn.Stat. § 179A.04, subd. 1(e) (1986). PERB held a hearing on the matter, and issued a decision upholding the findings made by BMS in their entirety.

## ISSUES

I. Does Minn.Stat. § 179A.06, subd. 3 on its face violate a fair share fee payor's rights under the First and Fourteenth Amendments of the United States Constitution?

II. Does Minn.Stat. § 179A.06, subd. 3 violate Kuehn's First and Fourteenth Amendment rights as interpreted and applied by the Bureau of Mediation Services and the Public Employment Relations Board?

III. Did the Public Employment Relations Board err by holding that organizations affiliated with Council 65 may assess fair share fees pursuant to Minn.Stat. § 179A.06, subd. 3?

## ANALYSIS

The standard of review of PERB's decision is dependent on the particular issue to be reviewed. This court has de novo review of Kuehn's constitutional challenges to Minn.Stat. § 179A.06, subd. 3 because PERB found it did not have jurisdiction over those issues and therefore made no determinations as to them. *Minnesota Racetrack, Inc. v. Goldberg*, 403 N.W.2d 885, 889 (Minn.Ct.App.1987). An agency's decision is reversed only when the decision reflects an error of law, the determinations

are arbitrary and capricious, or the findings are unsupported by the evidence. *Cable Communications Board v. Nor–West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984).

## I.

Kuehn challenges the facial validity of Minn.Stat. § 179A.06, subd. 3 on three grounds. First, Kuehn argues that the statute on its face violates a fair share fee payor's association rights under the first and fourteenth amendments because the calculation of the fees includes the Union's costs of benefits available to nonunion members, even if the benefits are unrelated to collective bargaining and contract administration. Second, Kuehn contends that the notice provision in Minn.Stat. § 179A.06, subd. 3 is constitutionally inadequate because it fails to disclose the basis for the fee in advance of charging the fee. And third, Kuehn argues that Minn.Stat. § 179A.06, subd. 3 is facially invalid because the statute places an unreasonable burden on the nonunion member to "specify those portions of the fee challenged and the reasons for the challenge."

Courts will not invalidate a statute on its face simply because it may be applied unconstitutionally, but only if it cannot be applied consistently with the Constitution. *Robinson v. State of New Jersey*, 806 F.2d 442, 446 (3d Cir.1986), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987). The United States Supreme Court has stated that a statute may only be declared facially invalid if 1) it is "unconstitutional in every conceivable application," or 2) if it "seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772 (1984).

### A. Association Rights

█ Kuehn argues that Minn.Stat. § 179A.06, subd. 3 violates a fair share fee payor's first amendment rights because the calculation of the fees includes a union's costs of benefits available to nonunion members even if the benefits are unrelated

to collective bargaining and contract administration. To be constitutional, according to Kuehn, the calculation should include only benefits related to collective bargaining and contract administration. Minn. Stat. § 179A.06, subd. 3 (1986) provides:

The fair share fee shall be equal to the regular membership dues of the exclusive representative, less the cost of benefits financed through the dues and available only to members of the exclusive representative. In no event shall the fair share fee exceed 85 percent of the regular membership dues.

Kuehn admits that our inquiry should be that articulated in *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). In *Ellis*, the Supreme Court stated that the question in determining the validity of a fair share fee is "whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer in labor-management issues." *Id.* at 448, 104 S.Ct. at 1892.

The statutory formula under review is consistent with, but narrower than the formula set forth in *Ellis*. Under Minn.Stat. § 179A.06, subd. 3, fair share fee payors do not get charged for benefits only available to "members of the exclusive representative." Fair share fee payors are only charged those costs related to collective bargaining and contract administration. Therefore, the calculation provision of Minn.Stat. § 179A.06, subd. 3 can be construed in a constitutional manner and is therefore a valid provision. *See Robinson*, 806 F.2d at 448 (upholding validity of similarly worded New Jersey statute against facial constitutional challenge).

B.  Notice Provision

■ Kuehn also attacks the facial validity of Minn.Stat. § 179A.06, subd. 3 on procedural grounds. Kuehn argues that the notice provision of Minn.Stat. § 179A.06, subd. 3 is constitutionally inadequate because it does not require the exclusive representative to disclose to the fair share fee

payor the basis for the fee in advance of charging the fee. We disagree.

Minn.Stat. § 179A.06, subd. 3 (1986) states that "[t]he exclusive representative shall provide advance written notice of the fair share fee to the director, the employer, and to unit employees who will be assessed the fee." Although the statute requires advance notice to be given, it does not detail what information must be contained in the notice. However, Minn.Stat. § 179A.04, subd. 3(f) (1986) authorizes the director of BMS to adopt rules to regulate the forms of petitions, notices and orders. BMS proposed amendments to its fair share fee rules three months after the United States Supreme Court rendered its decision in *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). In that case, the Court held that a union is required to provide all "potential objectors" to a fair share fee with adequate information concerning the basis for the amount of the fee, and that the information should be sufficient to enable the potential objectors "to gauge the propriety of the union's fee." *Id.* at 306, 106 S.Ct. at 1076. BMS's amendments became effective in October of 1986, and were followed by the second notice to Kuehn which is under review in this case.

The amendments included Minn.R. 5510.-1410, subpt. 1(D) (1987) which details that the advance notice must contain "sufficient information to identify expenditures for collective bargaining and contract administration services." That rule requires a union to identify expenditures for collective bargaining and contract administration services. The rules are consistent with the *Hudson* requirement that at the very least a union should provide "adequate disclosure * * * [of] the major categories of expenses." *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18. With information as to expenditures for collective bargaining and contract administration services, a nonunion employee would have sufficient information to make an informed objection to the use of his service fees if the employee desired. *See id.; Damiano v. Matish*, 830 F.2d 1363, 1370 (6th Cir.1987); *Tierney v.*

*City of Toledo,* 824 F.2d 1497, 1503 (6th Cir.1987). Because the notice provision of Minn.Stat. § 179A.06, subd. 3 is to be read in conjunction with the regulatory amendments which require a union to provide information about collective bargaining and contract administration services, Kuehn received constitutionally adequate notice.

### C. Burden on Nonunion Members

Kuehn also argues that the Minnesota fair share fee statute places an unreasonable burden on the nonunion member to "specify those portions of the fee challenged and the reasons for the challenge." He states that it is impossible for a nonunion member to challenge any specific portions of the amount of the fee when the statute does not require the union to disclose, in advance of a reduction of fees from the paycheck, the expenditures the union includes in its calculation of the fee. For the reasons stated above, this argument is without merit. Minn.R. 5510.1410, subpt. 1(D) requires that the union provide sufficient information to identify expenditures for benefits available only to members of the exclusive representative as well as information to identify expenditures for collective bargaining and contract administrative services. The rule was followed in this case and there was no unreasonable or unconstitutional burden placed on Kuehn.

### II.

■ In addition to arguing that Minn. Stat. § 179A.06, subd. 3 is facially unconstitutional, Kuehn further argues that the statute as interpreted and applied by BMS and PERB is unconstitutional. Kuehn argues that (a) the "residium approach" used by BMS to determine the amount of the fair share fee was not authorized by the statute; (b) that BMS and PERB incorrectly concluded that the October 6, 1986 notice was constitutionally adequate; (c) that BMS and PERB incorrectly found that he received a "prompt review"; and (d) that BMS and PERB misapplied the burden of proof in this case. We disagree and find that the statute is constitutional as applied.

### A. Residium Approach

Minn.Stat. § 179A.06, subd. 3 (1986) provides that:

The fair share fee shall be equal to the regular membership dues of the exclusive representative, less the cost of benefits financed through the dues and available only to members of the exclusive representative. In no event shall the fair share fee exceed 85 percent of the regular membership dues.

Under the residium approach, the totality of union expenditures are examined, with particular scrutiny in areas of concern raised by the challenger. Members-only benefit costs are deducted from the regular membership dues as well as the costs of impermissible political and ideological activities. The fair share fee payor is only required to pay the remaining balance or 85 percent of the regular dues, whichever is less. This approach is consistent with the language of the statute which authorizes the union to subtract benefits available only to union members from the regular membership dues to arrive at a fair share fee.

### B. The Notice Was Adequate

■ The October 6, 1986 fair share fee assessment notice is constitutional. Kuehn's argument that the notice did not state which expenditures were included and excluded in calculating the fair share fee is factually incorrect. The notice included Council 65 financial information from January 1, 1985 through December 31, 1985, AFSCME International financial information expenses for the fourth quarter of 1985, and financial information for Council 65. Each of these financial information sheets listed permissible and impermissible expenses. Based on these records, BMS found that the October 6, 1986 notice of fair share fee assessment was an adequate notice. This finding is adequately supported by the evidence and must be affirmed. *See Cable Communications Board v. Nor–West Cable,* 356 N.W.2d at 668 (standard of review for factual findings is whether they are supported by the evidence).

Appellant argues that the notice was inadequate because the independent auditor's verification did not articulate which expenses were related to collective bargaining and which were members-only benefits. The United States Supreme Court has recommended that a fair share fee notice include an independent auditor's verification of a union's expenditures so as to provide nonmembers with adequate information about the basis for the proportionate fee. *See Hudson*, 475 U.S. at 306, 106 S.Ct. at 1076. However, the Court did not require that an independent auditor categorize expenditures of the union as chargeable and nonchargeable. An independent auditor would be unfamiliar with the functioning of a union so that categorizing expenditures would be nearly impossible. Moreover, it is a union's responsibility to present its own categorization of expenditures, not the independent auditor's.

Kuehn also argues that the Union improperly determined its fair share by multiplying the regular dues by 85 percent. Pursuant to Minn.Stat. § 179A.06, subd. 3, a nonmember is only required to pay the costs related to collective bargaining and representative activities or 85 percent of the regular dues, whichever is less. In the present case, after examining and separating the expenditures, all three union levels of percentages of permissible charges were determined to be more than the statutory maximum. Therefore, in accordance with the statute, the Union properly multiplied the regular dues by 85 percent.

### C. Kuehn Received a Prompt Review

■ There was a five month time period between BMS's receipt of Kuehn's challenge on September 25, 1986 and the hearing on March 3, 1987. Appellant argues that he did not receive a "prompt review" and thus, his constitutional rights were violated. The United States Supreme Court in *Hudson* stated that a nonmember has a right to a "reasonably prompt decision by an impartial decisionmaker * * * to minimize both the impingement and the burden" on the dissenting employee's first amendment rights. *Hudson*, 475 U.S. at 309, 106 S.Ct. at 1077. The Court did not

articulate what it thought would constitute "a reasonably prompt decision." PERB concluded that in light of the voluminous record as well as BMS's desire to complete the first post-*Hudson* fair share fee case, appellant received a reasonably prompt review by an impartial state agency. Under these facts, we agree that appellant received a reasonably prompt hearing and decision.

### D. Burden of Proof

■ Kuehn argues that BMS erred in determining that once the exclusive representative has made a prima facie showing as to the validity of the fee, the burden then shifts to the challenger-appellant. Minn.Stat. § 179A.06, subd. 3 (1986) expressly provides that "[t]he burden of proof relating to the amount of the fair share fee is on the exclusive representative." Minn.R. 5510.1610 (1987) provides that "[t]he exclusive representative shall have the burden of proof to establish the validity of the amount of the fair share fee." The statute and rule make clear that the union has the ultimate burden of proof in establishing the validity of the fair share fee. BMS did not shift the burden of proof to appellant, but merely required appellant to proceed with his contrary evidence once the Union made a prima facie case. *See Peterson v. Minneapolis State Railway Co.*, 226 Minn. 27, 34, 31 N.W.2d 905, 909 (1948). BMS's decision is thus consistent with the statute and the rule.

### III.

■ Kuehn's final argument is that PERB erred by holding that fair share fees could be assessed pursuant to Minn.Stat. § 179A.06, subd. 3 by organizations affiliated with Council 65. Kuehn argues that he should not be required to pay fair share fees to organizations that are affiliated with his exclusive representative (Council 65) but are not actually his exclusive representative.

BMS found that the organizational bodies to which per capita tax payments are paid may provide services to Council 65 in

fulfilling its collective bargaining and contract administration responsibilities. This finding is supported by the evidence. Based on this finding, BMS held that payments to other levels of an integrated organization may be included in the base for determining an appropriate fair share fee. PERB agreed, stating that AFSCME was an integrated organization and therefore could appropriately include in the calculation of fair share fees payments of other levels of its organization. Those findings are supported by the evidence.

### DECISION

Minn.Stat. § 179A.06, subd. 3 is constitutional on its face and as applied. The findings in this case are supported by the evidence, there is no error of law and the decision of PERB is not arbitrary or capricious.

AFFIRMED.