*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1246**

Tiffany Thompson,
Relator,

vs.

Jefferson Partners LP,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed March 14, 2016
Affirmed
Bjorkman, Judge**

Department of Employment and Economic Development
File No. 33578411-3

Tiffany Thompson, St. Paul, Minnesota (pro se relator)

Jefferson Partners, LP, Minneapolis, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and

Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Relator challenges the determination of an unemployment-law judge (ULJ) that she is ineligible for benefits because she was discharged for employment misconduct, arguing that she was not aware of the requirement that she either join a union or pay a fair share of union dues and that such a requirement is illegal. We affirm.

## FACTS

Relator Tiffany Thompson was a bus driver for respondent Jefferson Partners LP from April 22, 2013 through April 17, 2015. During the hiring process, Jefferson notified Thompson that drivers are subject to the provisions of the collective bargaining agreement (CBA) between Jefferson and the Amalgamated Transit Union, Division No. 1498. Under the CBA, drivers must either join the union or pay a fair share—85%—of union dues, which are used to pay for administrative costs incurred by the union. At the union's request, Jefferson must discharge an employee who does not comply with this requirement. After being hired, Thompson received additional notice of this component of the CBA.

By March 2014, Thompson had neither joined the union nor paid a fair share of union dues. The union president contacted Thompson to remind her of this obligation. The union president also told Thompson that she could be discharged if she did not comply with it.

On March 10, 2015, Thompson spoke with a human-resources representative about the union-membership requirement. He told her that the union was threatening to have Thompson fired for not joining the union or paying her fair share of its dues. Thompson

responded that she thought the requirement was unfair and that it would be illegal to discharge her for not complying with it. On April 17, Jefferson discharged Thompson after the union exercised its right under the CBA to have Thompson removed.

Respondent Minnesota Department of Employment and Economic Development denied Thompson's application for unemployment benefits on the ground that she was discharged for employment misconduct. Thompson appealed the ineligibility determination. A ULJ conducted an evidentiary hearing at which Thompson and Heather Nierengarten, a human-resources employee, testified. The ULJ determined that Thompson was aware that she must join the union or pay a fair share of its dues and that her failure to do so constituted employment misconduct that makes her ineligible for benefits. Thompson requested reconsideration and the ULJ affirmed his decision. Thompson appeals by writ of certiorari.

## DECISION

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). The issue of whether an employee committed a particular act is a question of fact. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). This court views a ULJ's factual findings in the light most favorable to the decision, giving deference to the ULJ's credibility determinations, and will not disturb those findings if they are supported by substantial evidence. *Id.* Whether a particular act constitutes

3

disqualifying misconduct is a question of law, which we review de novo. *Stagg*, 796 N.W.2d at 315.

Thompson argues that the evidence does not support the ULJ's findings that she was aware of the CBA requirement that she join the union or pay a fair share of its dues during her employment. She further asserts that this requirement is invalid because an employee cannot be compelled to join a union. We address each argument in turn.

I. **Substantial evidence supports the ULJ's findings of fact.**

Thompson challenges the ULJ's findings that she was aware of the requirement to join the union or pay a fair share of its dues and the consequences of failing to do so. She argues that the evidence shows that no one told her about the requirement and that she did not receive a March 5, 2015 letter from the union president.

First, our review of the record shows that ample evidence supports the ULJ's findings of fact. Nierengarten testified that Thompson was informed about the CBA during the hiring process and given additional notice of the requirement to join the union or pay a fair share of its dues, and the fact that she could be discharged if she did not do so, shortly after she began her employment. While Thompson denied having any discussions about "how the union actually works" or about "paying your fair share," the ULJ found Nierengarten's testimony to be more credible on this point because she "is involved in the hiring process and is familiar with it." We must defer to this credibility determination.

Moreover, Thompson's own testimony supports the ULJ's findings. Thompson contends that a union representative bore a personal grudge against her and threatened to have her fired if she did not join the union, and that union authorities were generally

4

unresponsive and unhelpful. But she acknowledged that she knew—more than a year before her discharge—that she had neither joined the union nor paid her share of its dues, and that she was at risk of losing her job on this basis. And Thompson testified that she talked with a human-resources representative in March 2015 about the union-membership issue and whether Minnesota is a "right to work state."

Second, the ULJ did not make the specific finding Thompson challenges—whether Thompson received the union president's March 5, 2015 letter informing her that she would be discharged if she did not join the union or pay a fair share of its dues. But even if the ULJ had found that Thompson received the letter, any error in doing so would not be determinative. The evidence supports the ULJ's findings that Thompson had been informed multiple times over the course of two years that she needed to either join the union or pay her fair share of its dues and that Jefferson discharged her for failing to do so.

## II. Thompson was terminated for employment misconduct.

Employment misconduct is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). What is reasonable generally depends on the circumstances of the case. *Sandstrom v. Douglas Mach. Corp.*, 372 N.W.2d 89, 91 (Minn. App. 1985).

Thompson contends that Jefferson actually discharged her for not joining a union in violation of the National Labor Relations Act of 1935 and Minn. Stat. § 179.60 (2014). Stated another way, Thompson argues that the employment policy she violated is not reasonable. We disagree.

The CBA between Jefferson and the union requires all covered employees to "make application for membership in the Union within thirty (30) days of employment with [Jefferson]" or pay fair share, which is 85% of union dues. This provision does not require employees to join a union, and it is permissible under state and federal law. *See Ry. Emp. Dep't v. Hanson*, 351 U.S. 225, 238, 76 S. Ct. 714, 721 (1956) (upholding a "requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work"); *see also N.L.R.B. v. Gen. Motors Corp.*, 373 U.S. 734, 742, 83 S. Ct. 1453, 1459 (1963) ("It is permissible to condition employment upon [union] membership, but membership, insofar as it has significance to employment rights, may in turn be conditioned only upon payment of fees and dues."); *cf. Kuehn v. Am. Fed'n of State, Cty. & Mun. Emps.*, *Council No. 65*, 435 N.W.2d 130, 132-34 (Minn. App. 1989) (upholding statutory 85% fair-share requirement for public employees), *review denied* (Minn. Apr. 19, 1989).

Jefferson is bound by the CBA and must discharge employees who do not join the union or pay a fair share of its dues if the union asks Jefferson to do so. That is precisely what happened here. After Thompson was formally notified that she was not in compliance with this CBA provision, she had more than a year to ask Jefferson and the union questions about the union-membership issue. Substantial evidence demonstrates that she asked

6

appropriate questions, understood her obligations, and simply objected to them.  Her failure to comply is a significant violation of Jefferson's reasonable policy.  Accordingly, Thompson committed employment misconduct and she is ineligible to receive unemployment benefits.  *Cf. White v. Metro. Med. Ctr.*, 332 N.W.2d 25, 26 (Minn. 1983) ("An employee who was dismissed, pursuant to terms of a collective bargaining agreement, for nonpayment of union dues is not entitled to unemployment compensation benefits.").

**Affirmed.**