**In re ABRANTES CONSTRUCTION CORP., As Debtor in Possession, Debtor.**

**UNITED STATES of America, Appellant,**

**v.**

**NORTHLAND ASSOCIATES, INC. and Abrantes Construction Corp., Appellees.**

**NORTHLAND ASSOCIATES, INC., Plaintiff,**

**v.**

**The UNITED STATES of America, the Internal Revenue Service, and Abrantes Construction Corp., Defendants.**

Nos. 91–00058, 91–CV–0514 and 91–CV–0651.

United States District Court, N.D. New York.

Oct. 18, 1991.

Carl F. Guy, Syracuse, N.Y., for Abrantes.

Ernstrom & Estes, Rochester, N.Y., for plaintiff Northland Associates (J. William Ernstrom, of counsel).

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y. (William F. Larkin, Asst. U.S. Atty. of counsel) and U.S. Dept. of Justice, Washington, D.C. (Mark D. Lansing, Trial Atty., of counsel), for defendants.

MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

I.

INTRODUCTION

The motions before this court today involve two separate, but related, actions. The first is an appeal of the Bankruptcy Court's (Hon. Judge Gerling) decision granting appellee's, Northland Associates' ("Northland"), motion to lift the automatic stay to allow it to proceed in this court to seek a determination of its rights as against Abrantes Construction Corporation ("Abrantes" or "Debtor") and the United States Internal Revenue Service ("IRS") to certain funds retained by the United States

Army Corps of Engineers ("Corps"). The second, which must be considered only if this court affirms the Bankruptcy Court's decision to grant Northland's motion to lift the automatic stay, is a motion by the United States for dismissal or, in the alternative, for summary judgment.

For purposes of discussion, this court adopts the Bankruptcy Court's factual findings.[1] In January 1989, Abrantes and Northland entered into a "Teaming Agreement" to make it possible for Abrantes to bid successfully on a federal construction project at Fort Drum in Watertown, New York. Abrantes' bid was accepted; and on April 14, 1989, it entered into a contract with the Corps for construction at Fort Drum. The total contract price was $4,328,000. In accordance with the terms of their Teaming Agreement, Northland helped Abrantes meet the necessary contract bonding requirements.[2] On April 18, 1989, Northland and Abrantes applied for payment and performance bonds and agreed to joint and several liability for indemnification of the surety, CIGNA, in the event that CIGNA had to fulfill their obligations under the contract. Finally, on April 20, 1989, Abrantes and Northland entered into a subcontract agreement concerning the Fort Drum project which identified the parties as contractor and subcontractor, respectively. Article 4 of this contract stated that the amount due Northland on the specified work was $3,260,967. Thereafter, the parties commenced work.

On December 10, 1990, the IRS forwarded a notice of levy relating to Abrantes' income tax liabilities for the tax period ending June 30, 1990, in the amount of $88,999.57 to the Corps. In addition, on December 31, 1990, the IRS filed a lien against Abrantes for approximately $88,300. Subsequently, on January 9, 1991, before the project was completed, Abrantes filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. It also ceased performance of its obligations under its contract with the Corps. Northland, however, continued to perform its work as required by its contract with Abrantes.

As of January 9, 1991, the Corps was withholding approximately $459,000 in contract balances and retainage due under its contract with Abrantes. The IRS filed a proof of claim in the Chapter 11 Bankruptcy proceeding in the amount of $236,344.61 on February 4, 1991. Thereafter, on February 19, 1991, Northland filed its motion to lift the automatic stay pursuant to Bankruptcy Code § 362(d)(1), 11 U.S.C. § 362(d)(1).[3] On April 3, 1991, Judge Gerling issued the "Memorandum–Decision, Findings of Fact, Conclusions of Law, and Order" ("Decision") which is now before this court on appeal. As a result of this decision, Northland has instituted the present action for a determination of its rights to the funds retained by the Corps.

---

1. Unless otherwise stated, these facts are taken from Judge Gerling's decision which led to this appeal.

2. In situations involving federal contracts, the Miller Act, 40 U.S.C. § 270a provides in pertinent part that

> Before any contract, exceeding $25,000 in amount, for the construction, alteration or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":
> (1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

> (2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person....

40 U.S.C. § 270a (1982).

3. Bankruptcy Code § 362(d)(1) states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for *cause*, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1) (1982) (emphasis added).

## II.

## DISCUSSION

### A. Appeal of the Bankruptcy Court's Decision

In its capacity as an appellate court, this court's review of the Bankruptcy Court's order is plenary. *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1388 (2d Cir.1990) (citations omitted). As such, this court will independently review the factual findings and legal conclusions of the Bankruptcy Court. *Id.* (citations omitted); *see also* Rule 8013 of the Bankruptcy Rules.[4] While it must accept the Bankruptcy Court's findings of fact unless clearly erroneous, this court's review of the Bankruptcy Court's conclusions of law is *de novo. Id.* (citations omitted). Finally, it is axiomatic that this court will reverse the Bankruptcy Court only if it is "left with the definite and firm conviction that a mistake has been committed." *In re Manville,* 896 F.2d at 1388 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 543, 92 L.Ed. 746 (1948)).

After hearing oral argument, the Bankruptcy Court granted Northland's motion and modified the stay "solely to allow Northland to proceed to obtain a determination of the amount which it is due from the fund held by the Corps." *See* Decision at 10. Before analyzing the Bankruptcy Court's conclusions, it is important to review the legal arguments which the court considered. In its decision, the Bankruptcy Court summarized these arguments as follows. First, Northland contended that it, as well as other subcontractors, were beneficiaries of statutory trust funds, pursuant to Article 3–A of New York's Lien Law, which were currently held by the Corps. *See* Decision at 4. In addition, Northland argued that if the stay were not lifted it would suffer substantial economic harm not only because it would not receive pay-

ment for its own work but also because, as co-indemnitor of CIGNA, it might be liable to Abrantes' other subcontractors for their unpaid claims. *See* Decision at 4. Lastly, Northland argued that if the IRS were to receive the funds held by the Corps ahead of Northland's claims, it would suffer a direct economic loss. *See* Decision at 5.

The IRS, in opposition to Northland's motion, argued that as an unpaid subcontractor, Northland was limited solely to an action on the payment bond under the Miller Act, 40 U.S.C. §§ 270a–270f (1990). *See* Decision at 5. Further, the IRS argued that sovereign immunity barred attachment and garnishment of the funds held by the Corps and thereby precluded the existence of an Article 3–A trust fund with respect to these monies. Therefore, the IRS concluded that the funds held by the Corps were the property of the bankrupt estate and as such Northland had no greater claim to them than any other unsecured creditor. *See* Decision at 5. Finally, the IRS asserted a right to a set-off pursuant to Bankruptcy Code § 553 and an intent to move to lift the automatic stay to allow it to effect this set off. *See* Decision at 5–6.

Abrantes, the Debtor, also opposed Northland's motion.[5] Although it argued that most of the funds held by the Corps were part of the bankrupt estate, it conceded that Northland did possess a valid claim to a portion of these funds. *See* Decision at 6. Abrantes also argued that Northland was not a subcontractor but rather a joint venturer with the Debtor in the project; and, therefore, any rights Northland might have to these funds had to be determined according to the terms of the Teaming Agreement which compelled arbitration of disputes between the parties. *See* Decision at 6.

Against this legal backdrop, the Bankruptcy Court decided the motion. It right-

---

**4.** Rule 8013 of the Bankruptcy Rules provides: On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and

due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.
Bankruptcy Rule 8013 (Bkr.L.Ed.1991).

**5.** Abrantes did not appeal the Bankruptcy Court's decision to lift the automatic stay.

ly concluded that resolution of Northland's motion must begin with a determination of whether Northland demonstrated "cause" within the meaning of Bankruptcy Code § 362(d)(1). *See* Decision at 6. The Bankruptcy Court defined cause in terms of whether the funds held by the Corps were entirely the property of the bankrupt estate (no cause) or whether Northland possessed a distinct right to some portion of this fund superior to other creditors (cause). *See* Decision at 6. Although it did not answer this question specifically, the Bankruptcy Court did conclude that state law, not federal, should determine the parties' respective property interests in the retained funds. Moreover, based primarily on its interpretation of the Second Circuit's holding in *Active Fire Sprinkler Corp. v. United States Postal Serv.*, 811 F.2d 747 (2d Cir.1987), the Bankruptcy Court concluded that Northland, as an unpaid subcontractor on a federal construction project, had an equitable interest in the funds held by the Corps. *See* Decision at 8. In addition, it concluded that *Active Fire Sprinkler* stood for the proposition that a subcontractor's recovery under an equitable interest theory was not precluded or preempted by the Miller Act. *See* Decision at 9. Based on these conclusions, the Bankruptcy Court held that Northland had demonstrated "cause," that its legal claim to some portion of the funds was meritorious, and that Northland would be exposed to considerable harm if the stay were not lifted.[6] *See* Decision at 9–10. Furthermore, it held that the Abrantes, as Debtor, had not identified any countervailing harm it would experience if the stay were lifted and that therefore the balance of hardships weighed in favor of lifting the stay. *See* Decision at 10. As a result of these findings, the Bankruptcy Court granted Northland's motion.

On appeal, the IRS argues that the Bankruptcy Court abused its discretion by failing to analyze Northland's request in terms of the *Curtis* factors. The *Curtis* factors were originally set out in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984) and were adopted by the Second Circuit in *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir.1990). In *In re Sonnax*, the Second Circuit set forth the movant's burden of proof in a motion to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The court stated:

> [t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. § 362(g)(1).... If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

*In re Sonnax*, 907 F.2d at 1285. Upon concluding that neither the statute nor the legislative history defined "cause," the Second Circuit looked to case law for guidance. Quoting, with approval, *In re Curtis*, the court listed twelve factors a court should weigh in deciding whether to lift the automatic stay:

> (1) whether relief would result in a partial or complete resolution of the issues;
>
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;
>
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
>
> (6) whether the action primarily involves third parties;

---

**6.** In footnote three of his decision, Judge Gerling states that

> [t]he Court makes no binding determination on the merits of Northland's claim.... This conclusion herein is limited to the finding that Northland has at least a legal basis for

asserting that some portion of the funds held by the Corps is not property of the estate and may not be used to satisfy the Debtor's other creditors.

Decision at 10, n. 3.

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and balance of harms.

*In re Sonnax,* 907 F.2d at 1286 (quoting *In re Curtis,* 40 B.R. 795, 799–800 (Bankr. D.Utah 1984)).

■ After *In re Sonnax,* there is no doubt that a court's determination of whether a movant has met its burden of proof on the issue of "cause" must include an analysis of the *Curtis* factors. Although there is no specific reference to the *Curtis* factors in the Bankruptcy Court's decision, some of the language in its decision indicates that it may have undertaken a similar analysis. For example, its statement that "the balance of hardships weighs in favor of lifting the stay" is similar to *Curtis* factor # 12. *See* Decision at 10. In addition, in footnote 3, Judge Gerling states that his conclusion is limited to "the finding that Northland has at least a legal basis for asserting that some portion of the funds held by the Corps is not property of the estate and may not be used to satisfy the Debtor's other creditors." *See* Decision at 10, n. 3. Arguably, this conclusion could be the result of an analysis of *Curtis* factors # 2, # 6 and # 7. Based on these statements, this court is unable to determine with certainty whether or not the Bankruptcy Court undertook the proper analysis. Therefore, it cannot with confidence conclude that a mistake has been committed or that the Bankruptcy Court did not evaluate Northland's arguments in light of the *Curtis* factors, thereby abusing its discretion by granting Northland's motion. Accordingly, this court remands this action to the Bankruptcy Court with instructions to analyze, with specificity, Northland's arguments in terms of the *Curtis* factors to determine whether Northland has met its burden of proof to establish "cause." If it finds that Northland has failed to meet its burden of proof, the Bankruptcy Court should deny the motion. On the other hand, if after its analysis the Bankruptcy Court determines that Northland has met its burden, it must then decide whether Abrantes has met its burden to show that it is entitled to continued protection. Finally, before it grants the motion to lift the automatic stay, the Bankruptcy Court must balance the hardships to the parties of granting such relief.

### B. United States' Motion for Dismissal or Summary Judgment

In response to Northland's commencement of the present action to determine its right to funds retained by the Corps, the United States moves to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment. The court's decision to remand Northland's motion to lift the automatic stay to the Bankruptcy Court for further proceedings renders the United States' motion premature. Therefore, this court denies the motion without prejudice pending the Bankruptcy Court's decision on remand.

### III.

### CONCLUSION

Accordingly, since it is unable to determine with certainty whether the Bankruptcy Court undertook the proper analysis before granting Northland's motion to lift the automatic stay, the court remands this action with instructions to consider, with specificity, Northland's arguments for "cause" in light of the *Curtis* factors and then, only if such cause is shown, to require Abrantes to demonstrate that it is entitled to continued protection. As a last step, the Bankruptcy Court must balance the hardships to the parties before granting Northland's motion.

As a result of its decision to remand this action to the Bankruptcy Court, the court denies the United States' motion to dismiss Northland's complaint for failure to state a claim or, in the alternative, for summary judgment without prejudice pending the Bankruptcy Court's decision on remand.

IT IS SO ORDERED.