**NORTHLAND ASSOCIATES, INC., Plaintiff,**

**v.**

**UNITED STATES of America, INTERNAL REVENUE SERVICE, and Abrantes Construction Corporation, as Debtor in Possession, Defendants.**

**In re ABRANTES CONSTRUCTION CORPORATION, Debtor.**

**UNITED STATES of America, Appellant,**

**v.**

**NORTHLAND ASSOCIATES, INC., Appellee. (Two Cases)**

**Nos. 91–CV–651, 91–00058, 92–CV–117 and 92–CV–574.**

United States District Court, N.D. New York.

Nov. 2, 1993.

Ernstrom & Dreste, Rochester, NY (J. William Ernstrom, of counsel), for Northland Associates, Inc.

U.S. Dept. of Justice, Tax Div., Washington, DC (Mark D. Lansing, D. Patrick Mullarkey, of counsel), Gary Sharpe, U.S. Atty., Syracuse, NY (William F. Larkin, Asst. U.S. Atty.), for U.S.

Devorsetz, Stinziano, Gilberti & Smith, P.C., Syracuse, NY (Bruce E. Wood, of counsel), for Abrantes Const. Corp.

Richard Croak, U.S. Trustee, Utica, NY.

MEMORANDUM–DECISION AND ORDER

*INTRODUCTION*

McCURN, Senior District Judge.

On April 3, 1991, the bankruptcy court granted Northland Associates, Inc.'s ("Northland") motion to lift the automatic stay pursuant to 11 U.S.C. § 362(a). On April 13, 1991, the United States filed a notice of appeal with respect to this order. Shortly thereafter, Northland commenced the present civil action (91–CV–651) seeking an order requiring the Army Corps of Engineers ("Corps") to pay over to the court the contract retainages that it held pursuant to its contract with Abrantes Construction Corp. ("Abrantes") pending a determination of Northland's rights to these moneys vis-a-vis the United States, the Internal Revenue Service ("IRS"), and Abrantes.[1] *See* Northland's Complaint. The United States then moved to dismiss Northland's complaint or, in the alternative, for summary judgment.

This court entertained oral argument with respect to both the United States' appeal and its motion to dismiss on October 8, 1991. With respect to the United States' appeal, the court remanded the matter and directed the bankruptcy court "to consider, with specificity, Northland's arguments for 'cause' in light of the *Curtis* factors and then, only if such cause is shown, to require Abrantes to demonstrate that it is entitled to continued protection." *In re Abrantes Constr. Corp.*, 132 B.R. 234, 238 (N.D.N.Y.1991) (McCurn, C.J.). Moreover, in light of this remand, the court denied the United States' motion to dismiss without prejudice. *Id.* at 238–39.

In conformance with this court's instructions, the bankruptcy court, on remand, applied the *Curtis* factors to its reconsideration of Northland's motion. Based upon its application of these factors to the record before it, the bankruptcy court upheld its prior decision to lift the automatic stay to allow Northland to proceed with its action in this court. *See* Memorandum–Decision, Findings of Fact, Conclusions of Law and Order dated December 16, 1991 ("December 16, 1991, Decision"). The United States timely appealed this order (92–CV–117). The United States also appealed the bankruptcy court's March 26, 1992, order denying the United States' motion to lift the automatic stay for lack of jurisdiction (92–CV–574). In addition, the United States renewed its motion to have Northland's complaint dismissed or, in the alternative, for summary judgment. Northland opposed this motion and also cross-moved for summary judgment. Abrantes asserted no position with respect to any of these issues.

On June 23, 1992, this court heard oral argument with respect to both of the United States' appeals as well as the United States' and Northland's motions for summary judgment. With respect to the United States' appeal of the bankruptcy court's December 16, 1991, order granting Northland's motion to lift the automatic stay, the court orally affirmed that order and informed the parties that a written decision setting forth the

1. The United States contends that the IRS is not a suable entity and that, therefore, the court should dismiss the complaint as to the IRS. While courts have so held, they have also concluded that an action against the IRS is effectively one against the United States. *See Pugh v. Internal Revenue Serv.*, 472 F.Supp. 350, 351 (E.D.Pa.1979); *Terrapin Leasing, Ltd. v. United States*, 449 F.Supp. 7, 8 (W.D.Okla.1978). Since both the "IRS" and "the United States" have been named as defendants and the United States has defended the positions of both, the court will treat this suit as one effectively against the United States. Accordingly, the court will refer to both the United States and the IRS as "the United States."

court's reasoning would be forthcoming. As to the other matters before it, the court reserved decision.

While these matters were pending, the bankruptcy court dismissed the underlying Chapter 11 bankruptcy proceeding, *In re Abrantes Construction Corp.,* 132 B.R. 234, on January 7, 1993. On that same date, the IRS forwarded a Request for Offset—Government Contract to the United States Department of the Army, Corps of Engineers ("Corps") requesting that the amount of $436,743.56 be offset against any contract retainages held by the Corps. *See* United States Letter to the Court dated September 20, 1993, at 1. In response to this request, the Corps forwarded $172,371.00 to the IRS on January 13, 1993, and $243,267.33 to the IRS on August 25, 1993. *See id.* Having forwarded these funds to the IRS, the Corps no longer retains any funds pursuant to its contract with Abrantes. *See id.* at 1–2.

As a result of the foregoing events, the United States notified the court by letter dated September 20, 1993, that it believed that Northland's complaint was moot. In response to the United States' letter, the court directed the parties to submit letter briefs setting forth their positions with respect to the status of the pending matters. *See* Court's Letter dated September 24, 1993. The court now has had the opportunity to review the parties' responses and the applicable law. The following constitutes the court's findings of facts and conclusions of law with respect to all matters presently pending before the court.

## *BACKGROUND* [2]

On January 27, 1989, Abrantes and Northland entered into a Teaming Agreement. The purpose of this agreement was to enable Abrantes to bid successfully on a federal construction project at the Fort Drum military facility in Watertown, New York. On April 14, 1989, the Corps accepted Abrantes' bid and a contract for the construction of the project was entered into between Abrantes, as general contractor, and the United States. The contract price was $4,328,000.00. In compliance with the Teaming Agreement, Northland assisted Abrantes in meeting the necessary federal contract bonding requirements pursuant to the Miller Act, 40 U.S.C. § 270a et seq. In this regard, on April 18, 1989, Abrantes applied for payment and performance bonds with CIGNA. It appears that CIGNA agreed to be the surety and to provide both the performance and payment bonds required by the Miller Act. Subsequently, on April 20, 1989, Abrantes and Northland entered into a subcontract agreement concerning some of the work to be performed on the project. This subcontract identified Abrantes as the "Contractor" and Northland as the "Subcontractor." Pursuant to this subcontract Northland would receive $3,260,967.00 upon its successful completion of the specified work.

On December 10, 1990, the Internal Revenue Service ("IRS") served a Notice of Levy on the Corps in the amount of $88,999.57. This Notice of Levy represented Abrantes' unpaid income tax liability for the tax period ending June 30, 1990. Subsequently, on December 31, 1990, the IRS filed a Notice of Federal Tax Lien against Abrantes in the approximate amount of $88,300.00. On January 9, 1991, before the project was completed, Abrantes filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. Abrantes also defaulted on the performance of its obligations under the contract. Northland, however, continued to perform its work on the project pursuant to its subcontract with Abrantes. Northland claims that Abrantes has not paid in full the amounts due Northland under the subcontract. Therefore, Northland has attempted to assert a claim to the contract proceeds retained by the Corps for unpaid work in the amount of $404,310.04.[3] On February 4, 1991, the IRS filed

2. For a complete discussion of the factual history of this case, see *In re Abrantes Constr. Corp.,* 132 B.R. 234 (N.D.N.Y.1991) (McCurn, C.J.). Unless otherwise stated, the court adopts the facts as set forth therein.

3. At the time that the United States filed its original motion to dismiss, the Corps had withheld approximately $459,000.00 in contract balances and retainage due under the contract, some of which already had been approved for payment.

its proof of claim with the bankruptcy court in the amount of $236,344.61, exclusive of interest which has and continues to accrue from the date of the filing of the bankruptcy petition. *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

## *DISCUSSION*

### *I. United States' Appeals of the Bankruptcy Court's December 16, 1991 and March 26, 1992 Orders*

Section 362 of the United States Bankruptcy Code provides, in pertinent part, that "(c) [e]xcept as provided in subsections (d), (e), and (f) of this section— ... (2) the stay of any other act under subsection (a) of this section continues until the earliest of— ... (B) *the time the case is dismissed;* ..." 11 U.S.C. § 362 (West 1993) (emphasis added). As stated above, the bankruptcy court dismissed the underlying bankruptcy proceeding, *In re Abrantes Constr. Corp.,* 132 B.R. 234, on January 7, 1993. Thus, the stay, upon which the United States' appeals are based, is no longer in effect.

Prior to the bankruptcy court's dismissal of the bankruptcy action, this court orally affirmed the bankruptcy court's December 16, 1991, order granting Northland's motion to lift the automatic stay. Although at that time the court informed the parties that it would issue a written decision setting forth the reasons for its conclusions, the subsequent dismissal of the bankruptcy proceeding renders a detailed explanation of this court's decision unnecessary. Suffice it to say that the court's decision to affirm the bankruptcy court's order was based upon a finding that, on the whole, the bankruptcy court had correctly found that the *Curtis* factors weighed heavily in favor of lifting the automatic stay.

With respect to the United States' appeal of the bankruptcy court's March 26, 1992, Order denying its motion to lift the automatic stay, the United States stated in its letter brief that it was willing to stipulate to a withdrawal of this appeal as moot. *See* United States Letter Brief dated October 5, 1993, at 2. Northland has no objection to such a stipulation. *See* Northland Letter Brief dated September 29, 1993, at 1. Since the court agrees that the dismissal of the bankruptcy proceeding has rendered this issue moot, the court dismisses the United States' appeal (91–CV–574) of the bankruptcy court's March 26, 1992, order as moot.

### *II. United States' Motion to Dismiss or, in the alternative, for Summary Judgment and Northland's Cross-motion for Summary Judgment*

The United States originally based its motion to dismiss upon its contention that it had not waived its sovereign immunity under the circumstances of this case. The United States now argues that its offset of the funds once held by the Corps against Abrantes' tax liability provides a further basis for dismissal or summary judgment. *See* United States Letter Brief dated October 5, 1993 at 2.[4] In support of this contention, the United States argues that since the Corps no longer holds any funds pursuant to its contract with Abrantes, Northland, even if it were to prevail, would not be entitled to the relief requested in its complaint; i.e., an order requiring the Corps to pay the funds in its possession to Northland or the court. *See id.*

To the contrary, Northland argues that Article 3–A of the New York Lien Law applies to these contract funds and that Abrantes' bankruptcy status has no impact on the status of these funds as trust assets. *See* Northland Letter Brief dated September 29, 1993, at 2. Moreover, Northland contends that its equitable lien theory and its wrongful levy action against the United States are unaffected by Abrantes' bankruptcy status. *See id.*

The United States is correct that the court cannot address the merits of this civil action (91–CV–651) with respect to the United States until it determines whether or not the United States has waived its sovereign immunity. Therefore, the court, as a threshold matter, must decide this issue before it may

4. Abrantes informed the court that it concurred with the position set forth in the United States' letter brief. *See* Abrantes Letter Brief dated October 12, 1993.

address Northland's cross-motion for summary judgment.

*A. Waiver of Sovereign Immunity—Federal Statutes*

The United States argues that this court lacks jurisdiction to hear this case because the United States has not waived its sovereign immunity. To the contrary, Northland asserts that the United States has waived its sovereign immunity for purposes of this suit pursuant to three federal statutes, the Contract Disputes Act, 41 U.S.C. § 609; Section 106 of the Bankruptcy Code, 11 U.S.C. § 106; and the Wrongful Levy Statute, 26 U.S.C. § 7426. It is axiomatic that waivers of sovereign immunity must be expressed unequivocally and must be strictly construed. *Baer v. Abel,* 648 F.Supp. 69, 76 (W.D.Wash.1986) (citing *Ruckleshause v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983) (other citations omitted)). Moreover, the court's jurisdiction is circumscribed by the express language of any consent to be sued, however limited or conditioned. *Id.* Keeping these guidelines in mind, the court will discuss each of these statutes in turn.

1. *Contract Disputes Act, 41 U.S.C. § 609*

Northland's argument with respect to the Contract Disputes Act is somewhat convoluted. As best the court can make out, this argument is premised upon Northland's assertion that it commenced this action in a representative capacity on behalf of itself and all of Abrantes other subcontractors to assert the legal right of Abrantes to the funds held by the Corps. *See* Northland Memorandum of Law at 17. According to Northland, since it has asserted Abrantes' legal rights and Abrantes is in privity of contract with the Corps, Northland is also in privity with the Corps, at least for purposes of this action. *See id.* Neither Northland nor the United States appears to take this theory very seriously. Northland cites no case law to support its argument nor does it expend much time trying to justify or explain its position. For its part, the United States does not even bother to discuss the applicability of this statute to the issue of sovereign immunity.

Even if Northland were able to convince this court that the Contract Disputes Act applied to the facts of this case, Northland would, nonetheless, be in the wrong forum. By its very terms, the Contract Disputes Act requires that "*[a]ll claims* by a contractor against the government relating to a contract *shall be in writing* and *shall be submitted to the contracting officer for a decision.*" 41 U.S.C. § 605(a) (West 1987) (emphasis added). There is no indication that Abrantes, or Northland in its alleged representative capacity, has filed such a claim. Moreover, even if it had and the Contracting Officer had made a determination unfavorable to Northland, Northland's recourse would be to appeal that decision to the United States Court of Federal Claims, not this court. *See* 41 U.S.C. § 609(a)(1) (West 1987 & Supp. 1993). Accordingly, the court concludes that the Contract Disputes Act does not serve as a waiver of the United States' sovereign immunity in the present action.

2. *Section 106 of the Bankruptcy Code, 11 U.S.C. § 106* [5]

Northland asserts that section 106 of the Bankruptcy Code, 11 U.S.C. § 106, provides that the United States may not raise the defense of sovereign immunity against a claim brought to assert the debtor's right to funds where the United States has also made a claim for these same monies. *See* Northland Memorandum of Law at 15–16. According to Northland, this is because the making of such a claim by the United States constitutes a waiver of sovereign immunity. In support of this position, Northland cites this court's decision in *In re Pressimone,* 39 B.R.

5. Section 106 provides, in pertinent part, that:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate....

11 U.S.C. § 106 (West 1993).

240, 243 (N.D.N.Y.1984), in which the court stated that the broad waiver of immunity in this statute was intended to codify "[d]ecisions which permitted the bankruptcy courts to determine the amount and dischargeability of tax liabilities owed by the debtor notwithstanding the IRS assertion of sovereign immunity." *Id.* at 243.

The United States agrees that it has waived its sovereign immunity pursuant to section 106 to the extent that the Debtor, *in this case Abrantes, may request the bankruptcy court* to make a determination of its tax liability to the United States. *See* United States Memorandum of Law, Exhibit 6 at 5. As the United States correctly asserts, however, *only* a taxpayer may contest his tax liabilities, not a third party such as Northland. *Cf. Snodgrass v. United States,* 834 F.2d 537, 539 (5th Cir.1987) (section 1346 permits only taxpayer to seek refund—thus adopting narrow construction of waivers of immunity); *Phillips v. United States,* 346 F.2d 999, 1000 (2d Cir.1965) (section 1346 only available where plaintiff brings suit as taxpayer). Moreover, the United States argues that its waiver of sovereign immunity pursuant to § 106 applies only to bankruptcy proceedings. *See* United States Memorandum of Law, Exhibit 6 at 6.

Given the well-established principle that waivers of sovereign immunity should be strictly construed, this court agrees with the United States' position. There is nothing in the language of § 106 to suggest that its waiver is broad enough to encompass the present situation in which a third party attempts to obtain jurisdiction over the United States in a non-bankruptcy proceeding so that a district court can determine the third-party's rights to disputed funds vis-a-vis the United States. Accordingly, the court concludes that the United States has not waived its sovereign immunity pursuant to § 106 for purposes of this action.

3. *Wrongful Levy Statute, 26 U.S.C. § 7426*

Pursuant to § 7426

> *[i]f a levy has been made* on property ..., any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that *such property was wrongfully levied upon may bring a civil action* against the United States in a district court of the United States....

26 U.S.C. § 7426(a)(1) (West 1989) (emphasis added). There is no doubt that section 7426 provides a waiver of the United States' sovereign immunity in those situations in which a "levy has been made" and a third party claims both an interest in the property and that such property was wrongfully levied. At issue here, however, is the threshold question of whether a levy has been made.

In support of its claim that the United States has wrongfully levied the funds retained by the Corps, Northland cites the Fifth Circuit's decision in *United Sand and Gravel Contractors, Inc. v. United States,* 624 F.2d 733, 737 (5th Cir.1980). The issue in *United Sand* was whether the plaintiff had filed his wrongful levy action against the United States within the nine month statute of limitations period prescribed by § 6532(c). The district court dismissed the suit because it determined that the plaintiff's claim had not been filed within the applicable time limit, and the Fifth Circuit affirmed. Interestingly, in *United Sands,* it was the subcontractor, not the United States, which on appeal proposed the theory that any levy purportedly conducted by the IRS on property held by the Corps was not actually a levy but rather a set off that affected only the rights of the general contractor. *Id.* at 736. Although not necessary to its decision, the court discussed, and rejected, this argument under the circumstances of the case before it.

First, the court noted that neither party disputed the fact that the United States may refuse to pay funds owed to a contractor who owes taxes to the United States and may apply such funds as a set off against such taxes. *Id.* at 736 (citations omitted). Despite this well-established principle, however, the court did not agree with the plaintiff's contention that even when the IRS goes through the formalities of levying on the property of a tax delinquent in the hands of another government agency, the legal effect

of such an action is the same as if the United States had proceeded by setoff. *Id.* The basis for the court's disagreement with this theory was two-fold. First of all, the court concluded that § 6331, the general levy authorization statute, did not specifically exempt property in the hands of a government agency from its reach. *Id.* Secondly, the court relied upon the fact that it was an established practice of the IRS, recognized by the courts, to proceed against property in the hands of other federal agencies by formal levy rather than set off. *Id.* The Fifth Circuit cited no case law to support these conclusions nor did it provide any other basis for its decision.

In opposition to Northland's contention that § 7426 applies to this case, the United States asserts that its actions with respect to the funds retained by the Corps are in the nature of a set off rather than a levy. In support of this position, the United States cites the First Circuit's decision in *United States for Use and Benefit of P.J. Keating Co. v. Warren Corp.,* 805 F.2d 449 (1st Cir. 1986).[6]

In *Warren Corp.,* the First Circuit first distinguished between a "set off" and a "levy." According to the court, a set off involves the United States' application of money owed to the taxpayer to reduce a taxpayer's outstanding tax liability. *Id.* at 451. On the other hand, a levy involves the United States' seizure of property to satisfy a taxpayer's liability. *Id.* As in the present case, the United States in *Warren Corp.* argued that its actions constituted a set off because the entity transferring the funds (the Army Corps) and the entity collecting the funds (the IRS) were both agencies of the federal government. *Id.* at 451. The court concluded that the United States' right to set off funds in this manner had been established at least since the Supreme Court's decision in *United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), and had been consistently reaffirmed since that time. *Warren Corp.,* 805 F.2d at 452.

Recognizing that the Fifth Circuit's *dicta* in *United Sand* was to the contrary, the court went on to explain that nothing in that decision persuaded it "[t]hat mere service of a notice of levy upon a government agency is sufficient to create a new right of action in a district court for a plaintiff who would otherwise have had to challenge the government's set off in the Claims Court." *Id.* The court went on to state that although it was true that § 6331 could be read to include formal levies against property held by government agencies, "this characterization of property transfer between two components of the federal government simply ignores reality." *Id.* To support this conclusion, the First Circuit cited other decisions in which courts, despite the IRS' service of a notice of levy upon another government agency, did not transform a traditional set off into a levy. *Id.* (citing *Aetna Ins. Co. v. United States,* 456 F.2d 773, 773, 197 Ct.Cl. 713 (1972) (IRS serves notice of levy upon GSA but transfer treated as setoff); *Barrett v. United States,* 367 F.2d 834, 835, 177 Ct.Cl. 380 (1966) (IRS serves notice of levy on Public Health Service but transfer treated as set off)).

In further support of its conclusion that a transfer of funds between government agencies constitutes a setoff, no matter what it is called, the court directed its attention to the regulations pertinent to § 7426. In pertinent part, one of these regulations provides that

> [n]o action is permitted under section 7426(a)(1) unless there has been a levy upon the property claimed. For example, no cause of action arises under this section where the United States sets-off an amount due to the taxpayer against taxes owed by him *since no levy has been made.*

*Warren Corp.,* 805 F.2d at 453 and n. 4 (quoting 26 C.F.R. § 301.7426.1(a)(1) (emphasis supplied)).

On the basis of these factors, as well as the principle that waivers of sovereign immunity must be strictly construed, the First Circuit concluded that

> a government agency's transfer to the IRS of funds owed by a delinquent tax payer should be properly characterized as a set off by the federal government even if the

6. Northland made no attempt to distinguish this case in its memorandum of law.

transfer occurs pursuant to a formal notice of levy. To hold otherwise, places undue significance on the type of form used by the IRS to notify the other agency of the taxpayer's delinquency.

*Id.* at 453.

This court could locate no case law, nor did the parties direct the court's attention to any, in which the Second Circuit has been faced with this issue. Thus, the court finds itself in the position of being able to choose between the *dicta* in *United Sand* and the holding of *Warren Corp.* as a basis for its own decision in this matter. Given the well-reasoned decision in *Warren Corp.* vis-a-vis the conclusory statements of *United Sand,* the choice is relatively simple. For the reasons stated in *Warren Corp.,* the court concludes that under the circumstances of this case the IRS' service of a notice of levy on the Corps with respect to the funds it retains under its contract with Abrantes is in the nature of a set off and does not constitute a levy. Therefore, § 7624 is inapplicable to this case; and, as such, it does not provide a waiver of the United States' sovereign immunity.

*B. Waiver of Sovereign Immunity—Article 3–A of the New York Lien Law*

In addition to its arguments with respect to the above-cited statutes, Northland also asserts that Article 3–A of the New York Lien Law provides a basis for its action against defendants.[7] In this regard, Northland asserts that the United States' debt to Abrantes pursuant to the construction project arises from a fiduciary duty, either in the nature of a statutory trust or an equitable lien. *See* Northland Memorandum of Law at 5. Thus, Northland contends that the United States does not possess the kind of mutual debt against which it may set off its claim for unpaid taxes. *See id.* (citing *In re Drexel Burnham Lambert Group, Inc.,* 113 B.R. 830, 847 (Bkrtcy.S.D.N.Y.1990)). Furthermore, Northland argues that "[if] Northland is correct in the application of Article 3–A, the actions taken by [the United States] and others with respect to the contract funds may subject them to civil and criminal liability for diversion of trust fund assets." *See* Northland Letter Brief dated September 29, 1993 at 2. To the contrary, the United States argues (1) that the Miller Act preempts Article 3–A and (2) that Article 3–A does not provide a waiver of sovereign immunity.

The Supreme Court has outlined three ways in which a federal law may preempt state law. First of all, it may do so expressly. Secondly, it may reflect a Congressional intent to occupy the entire legal field in the area. Finally, state law may conflict with federal law, either directly in that it is impossible to comply with both or indirectly in that the state law is an obstacle to the accomplishment of the federal objective. *K–W Indus. v. National Surety. Corp.,* 855 F.2d 640, 642 n. 3 (9th Cir.1988) (citing *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. & Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)).

In the present case, Northland concedes that Congress enacted the Miller Act to replace statutes such as Articles 2 and 3 of the New York Lien Law. *See* Northland Memorandum of Law at 30; *Onondaga Commercial Dry Wall Corp. v. 150 Clinton Street, Inc.,* 25 N.Y.2d 106, 302 N.Y.S.2d 795, 250 N.E.2d 211 (1969); *C.B. Strain & Son, Inc. v. J. Baranello & Sons,* 90 A.D.2d 924, 457 N.Y.S.2d 925 (3d Dep't 1982). Nonetheless, Northland contends that, as an entirely separate remedy, Article 3–A is available to subcontractors and suppliers on all construction projects, including those involving the United States. *See* Northland Memorandum of Law at 31 (citing *Scriven v. Maple Knoll Apartments,* 46 A.D.2d 210, 361 N.Y.S.2d 730 (3d Dep't 1974)). Although the court agrees that Article 3–A provides subcontractors with an alternative remedy to Articles 2 and 3, it does not follow automatically from this con-

7. Section 77 of Article 3–A provides, in pertinent part, that "(1) [a] trust arising under this article may be enforced by the holder of any trust claim, including any person subrogated to the right of a beneficiary of the trust holding a trust claim, in a representative action brought for the benefit of all beneficiaries of the trust...." N.Y. Lien Law § 77 (McKinney 1993).

clusion that Article 3–A is not preempted by the Miller Act.

First of all, it is important to note that Article 3–A was not intended to supplant the remedies of the older Articles 2 and 3 nor was it intended to enlarge the rights of trust beneficiaries beyond those of lienors under these articles. *See C.B. Strain & Son,* 90 A.D.2d at 925, 457 N.Y.S.2d at 927. Moreover, in determining whether the Miller Act preempts application of Article 3–A to the United States, it is instructive to look at the purposes underlying these two statutes. Congress enacted the Miller Act to provide protection for subcontractors on federal projects because sovereign immunity barred these workmen from attaching federal property under the auspices of state created liens, including mechanics liens. *See F.D. Rich Co. v. United States for Use of Indus. Lumber Co.,* 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703, 709 (1974). As such, the Miller Act provides a remedy for subcontractors, but only against the surety, when the general contractor fails to pay them for work performed on a federal construction project. Like the state mechanics liens for which it provides a substitute, the Miller Act is premised upon "the equity in favor of those whose actual expenditure of work or utilization of material has enhanced the value of the property in question." *United States for Use and Benefit of Mariana v. Piracci Constr. Co.,* 405 F.Supp. 904, 907 (D.D.C.1975) (quoting *Arthur N. Olive Co. v. United States ex rel. Marino,* 297 F.2d 70, 72 (1st Cir.1961)). Likewise, the primary purpose underlying the enactment of Article 3–A was to ensure that laborers and materialmen were paid from the project funds by making the owner or the contractor a trustee for the benefit of subcontractors and others like Northland. *See Cadin Constr. Corp. v. Adam Jay Assocs.,* 86 Misc.2d 407, 382 N.Y.S.2d 671 (Sup. Ct., Nassau County, 1976).

Given the identical purposes of Article 3–A and the Miller Act; i.e., protection of subcontractors and materialmen, as well as Congress' intent to provide such subcontractors with an alternative remedy to normal state procedures without waiving the United States' sovereign immunity, the court concludes that to allow Northland to proceed against the United States under Article 3–A, absent an independent waiver of sovereign immunity, would frustrate the purposes of the Miller Act.[8] Accordingly, the court concludes that, under the circumstances of this case, the Miller Act preempts the application of Article 3–A to the United States; and, therefore, Article 3–A cannot serve as a waiver of sovereign immunity.

The court has reviewed the case law relevant to all the arguments that Northland proposes in support of its position that the United States has waived its sovereign immunity under the circumstances of this case. Having completed this review, the court finds that neither the Contract Disputes Act, § 106 of the Bankruptcy Code, the Wrongful Levy Statute, nor Article 3–A of the New York Lien Law provides such a waiver. Therefore, the court concludes that it lacks jurisdiction over the United States in this action. Accordingly, the court grants the United States' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that the United States has not waived its sovereign immunity and, therefore, the court lacks jurisdiction over this suit as to the United States.

Having dismissed the complaint as to the United States, only one defendant remains in this suit, Abrantes Construction Corporation. The relief that Northland seeks in this action, however, cannot be obtained from Abrantes. In its complaint, Northland sought an order requiring the Corps to pay over to the court the retained funds in the Corps' possession pending a determination of the competing claims to these monies. As stated above, the Corps no longer retains any funds pursuant to its contract with Abrantes. Nor does Abrantes have any of these funds due to the United States exercise of its right

8. Northland's reliance on *Active Fire Sprinkler Corp. v. United States Postal Serv.,* 811 F.2d 747 (2d Cir.1987), is misplaced. In *Active Fire Sprinkler,* the Postal Service was governed by another statute that provided an independent waiver of sovereign immunity. In this case, there is no such independent waiver.

to setoff. Therefore, because it can no longer provide Northland with the relief it seeks, the court dismisses this action against Abrantes as moot.

## *CONCLUSION*

For the reasons stated above, the court affirms the bankruptcy court's December 16, 1991 order and thereby denies the United States' appeal (92–CV–117) of said order. In addition, the court dismisses the United States' appeal (92–CV–574) of the bankruptcy court's March 26, 1992, order denying the United States' motion to lift the automatic stay as moot. The court also grants the United States' motion for summary judgment dismissing Northland's complaint as to the United States on the grounds that the United States has not waived its sovereign immunity under the circumstances of this case. Having done so, the court must deny Northland's cross-motion for summary judgment. Finally, given the fact that the Corps no longer retains any funds pursuant to its contract with Abrantes, the court dismisses this action against Abrantes because the court can no longer grant Northland the relief it seeks. In this regard, the court instructs the clerk to enter judgment in favor of defendants and against plaintiff in civil action 91–CV–651 dismissing the complaint in its entirety.

IT IS SO ORDERED.