Quincy Ashton MILLER, et al., Plaintiffs

v.

UNITED STATES of America, Defendant.

No. 93CV7015.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 2, 1996.

Martha M. McMinn, Sioux City, IA (argued), Richard R. Huber, Milan, OH, and Timothy W. Shuminsky, Shuminsky, Shuminsky & Molstad, Sioux City, IA, for plaintiffs.

S. Robert Lyons (argued), Department of Justice, Tax Division, Henry J. Riordan, Beverly Ortega Babers, Charles M. Green, Department of Justice, Washington, DC, and Robert G. Trusiak, Office of the U.S. Attorney, Toledo, OH, for defendant.

## MEMORANDUM AND ORDER

CARR, District Judge.

This is a wrongful-levy action brought pursuant to 26 U.S.C. § 7426. The Government has moved to dismiss plaintiffs' complaint for failure to state a claim. For the following reasons, the motion shall be denied.

### *THE DISPUTE*

A profitable crime, a resulting tax debt, and the Government's efforts to collect that debt underlie this suit. Plaintiffs are two minors. Their father and next friend, David J. Miller, has sued on their behalf. Mr. Miller was arrested in the Netherlands in 1984. Subsequently, in the United States, he pleaded guilty to and was jailed for conspiring to import marijuana, filing false income tax returns, and failing to report monetary instruments. *Miller v. Taylor,* No. 91–56354, 967 F.2d 588 (9th Cir. July 10, 1992).

With Mr. Miller in jail, the United States set about collecting his unpaid taxes. Mr. Miller's earlier residence in the Netherlands complicated this endeavor. The Internal Revenue Code grants the Government a right to "levy" on the property of a taxpayer who refuses to pay a tax debt within ten days after notice and demand to do so. 26 U.S.C. § 6331. The United States, however, cannot levy in the Netherlands' territory without that sovereign state's consent.

This impediment has, however, been resolved through a 1948 tax treaty with the Netherlands, whereby the United States can use alternative means to subject property in Holland to American tax claims. The tax treaty provides that the United States may request Dutch enforcement of "revenue claims ... which have been finally determined" under United States law (Treaty Art. XXII(2), Doc. 39, Exh. 2). The United States must submit to the Netherlands docu-

mentation of such a final determination (*id.* Art. XXII(3)). The Netherlands then may, "in accordance with" Dutch law, "collect" the claim for the United States (*id.* Art. XXII(2)). *See also United States v. van der Horst,* 270 F.Supp. 365, 369 (D.Del.1967).

The United States proceeded under this treaty to collect Mr. Miller's tax debt. In its answer in the instant suit, the Government admits that "the Internal Revenue Service was assisted by the government of [the] Netherlands in levying on property" in the Netherlands (Doc. 13 ¶ 2). Specifically, plaintiffs' complaint alleges that Dutch agents seized and sold the contents of a safe-deposit box in a Dutch bank (Doc. 1 ¶ 2). The Government's answer suggests that the Netherlands forwarded the sale proceeds to the United States (Doc. 13 ¶ 2).

Plaintiffs, alleging that they alone were the lawful owners of the contents of the safe-deposit box, claim that the United States thereby levied on their property to satisfy their father's tax debt (*id.* at ¶¶ 2, 4). As the United States admits, plaintiffs are not liable for their father's tax debt (Doc. 13 ¶ 3). Moreover, plaintiffs allegedly received no notice of levy (Doc. 1 ¶ 4). *See* 26 U.S.C. § 6331(d) (requiring notice of levy). Accordingly, Plaintiffs request a judgment "for the value of the property wrongfully levied" upon (Doc. 1 at 2).

## *DISCUSSION*

The Government's motion to dismiss raises an apparently novel question: may United States citizens who hold property abroad sue the United States for allegedly wrongfully causing a treaty partner to seize and sell such property and forward the sale proceeds to the United States? The Government contends that two considerations bar such a suit: (1) its sovereign immunity and (2) the act-of-state doctrine, which prohibits judicial review in United States courts of a foreign sovereign's acts.

### I. *Sovereign immunity*

■ The United States possesses sovereign immunity. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). *Id.* This means that it cannot be sued without its consent. The terms of its consent define, and thus both create and limit, this court's jurisdiction. *Id.*

■ One waiver of sovereign immunity is found in the "wrongful-levy" provision of the 1966 Tax Lien Act, which is codified as § 7426 of the Internal Revenue Code, 26 U.S.C. § 7426. *Northland Associates, Inc. v. United States,* 160 B.R. 484, 490 (N.D.N.Y. 1993). Section 7426(a)(1) provides:

If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which the levy arose) who claims an interest in or lien on such property and that property was wrongfully levied upon may bring a civil action against the United States.

District courts have original jurisdiction over such actions. 28 U.S.C. § 1346(e). Where the property was sold, the court may enter judgment in plaintiffs' favor for "the amount received by the United States from the sale of such property" plus interest. *Id.* § 7426(b)(2)(C)(i).

■ The threshold question in determining whether a complaint is permissible under § 7426 is whether a "levy" was made. *Northland Associates, supra,* 160 B.R. at 490. More precisely, the threshold question is whether the *United States* levied. *See id.* By employing the passive voice in § 7426 ("a levy has been made"), Congress did not specify *who* must execute the levy. Common sense suggests, however, that Congress did not intend to subject the United States to liability for a foreign state's independent acts. The act-of-state doctrine, as explained below, would in any event prevent United States courts from enforcing such liability. I conclude, accordingly, that the waiver of sovereign immunity under § 7426 applies only where the United States has levied.

In support of its claim that § 7426 does not authorize plaintiffs' complaint, the Government argues, first, that plaintiffs fail to allege a "levy" by the United States. The contents of the safe deposit box, the Government asserts, were "not *seized* in the United States by American officials under authority of the Internal Revenue Code" (Doc. 42 at 1)

(emphasis added). Rather, the contents were seized "in the Netherlands by Dutch officials pursuant to" the 1948 tax treaty (*id.*; Doc. 39 at 6). Second, the Government infers from the venue provision of the 1966 Tax Lien Act that Congress did not intend in § 7426 to waive sovereign immunity where property was seized abroad.[1]

Both of the Government's arguments are based on a narrow construction of the term "levy." Under the Internal Revenue Code, however, "levy" means not only "seizure," as the Government contends, but also the entire process of collecting a taxpayer's debt. Consequently, the Government's arguments fail.

### A. Levy

The Internal Revenue Code defines "levy" broadly: levy *"includes* the power of distraint and seizure by any means." 26 U.S.C. §§ 7701(a)(21), 6331(b) (emphasis added). To distrain means to seize, and distraint means seizure. Webster's Third New International Dictionary (1993). Hence "a levy" denotes at least a power to seize, and "to levy" means to exercise such a power.

Plaintiffs' complaint alleges an indirect exercise by the Government of a power to seize. The Government gained such a power with regard to any property belonging to Mr. Miller from § 6331 of the Internal Revenue Code. That provision authorizes the United States to "levy" on the property of a delinquent taxpayer.

Plaintiffs allege that the United States, relying on this right, and proceeding under the 1948 tax treaty, authorized the Netherlands to seize and sell property belonging, not to their father, but to them. In plaintiffs' view, the United States simply seized their property by means of Dutch intermediaries. I agree with plaintiffs that the United States levied by proxy. Such use of Dutch assistance to obtain payment of an American taxpayer's debt is, in my view, an exercise of the power granted by § 6331 to seize property belonging to delinquent taxpayers. Hence,

such seizure is a levy as that term is used in §§ 6331(b), 7701(a)(21), and 7426(a)(1).

Alternatively, even if the term levy does not encompass an indirect exercise under § 6331 of power to seize, plaintiffs state a claim under § 7426. Under the Internal Revenue Code, the word "levy" merely "includes," or encompasses, the power-to-seize definition. The word "includes," the Code explains, "shall not be deemed to exclude other things otherwise within the meaning of" levy. 26 U.S.C. § 7701(c). "Levy," therefore, is not simply a synonym for "seizure" and nothing more. Rather, the term "levy" in the Code denotes everything else that it otherwise denotes in American law.

In American legal usage, levy "is an ambiguous word, with its meaning dependent on the context in which it is used." *Hill v. Whitlock Oil Services, Inc.*, 450 F.2d 170, 174 (10th Cir.1971). It is also a broad term: it "may refer to all the steps, collectively, by which public revenue is raised." *In re Zoller's Estate*, 53 Del. 448, 171 A.2d 375, 379 (1961); *State ex rel. Board of Education v. Hamrock*, 11 Ohio Misc. 36, 225 N.E.2d 795, 798 (Ohio Com.Pleas 1967).

In federal tax law, "levy is ordinarily used to describe *the process* of reaching amounts owing to the taxpayer by third persons (e.g. bank deposits)." 4 Boris Bittker & Lawrence Lokken, Federal Taxation of Income, Estates, and Gifts (2d ed. 1992) ¶ 111.6.5 at 111–172 (emphasis added). This "process" is understood broadly: whether a levy was made does not depend on whether the Internal Revenue Code's formal levy procedures were followed. *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 304 (5th Cir.1985). Instead, "any forced taking of property" is a levy. *Id.* at 305 n. 9.

Plaintiffs allege that the Government engaged in the revenue-collection process. They allege that its request for Dutch assistance initiated a forced taking of property. That taking ultimately resulted in receipt of funds to help satisfy Mr. Miller's debt. Thus, the United States levied in the broad sense that the Internal Revenue Code

---

1. As explained below, the Government does not, and no longer may, raise a defense of improper venue. Its venue-based argument is aimed solely at construing § 7426 favorably to it.

adopts. *See* 26 U.S.C. § 7701(c). Consequently, plaintiffs' complaint alleges a levy by the United States.

### B. *Venue and § 7426*

■■■ Second, the Government seeks support for its motion from the venue provision of the 1966 Tax Lien Act. It is important to note, initially, that the Government does not raise a defense of improper venue. Nor can it, because it has waived such a defense. It failed to object to venue in its answer and its initial motion to dismiss (both filed more than two years before the present motion) (Doc. 13, 15). *See* Fed.R.Civ.P. 12(h)(1) (defense of improper venue is waived where not raised in responsive pleading or motion); *Pratt v. Rowland,* 769 F.Supp. 1128, 1132 (N.D.Cal. 1991) ("defendants wishing to raise improper venue as a defense must do so in their *first defensive move* "). Where a party raises no "timely and sufficient objection to venue," no venue concerns impair the court's jurisdiction. 28 U.S.C. § 1406(b). *See also Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979) (improper venue may be waived and does not affect court's jurisdiction).

■■■ The venue provision of the 1966 Tax Lien Act states that a § 7426 wrongful-levy action "may be prosecuted only in the judicial district where the property is situated at the time of levy." 28 U.S.C. § 1402(c). The Government argues that this venue designation "limit[s] the waiver of sovereign immunity" in § 7426 (Doc. 42 at 4).

In making this argument, the Government continues to construe "levy" to mean only "seizure." It contends that Congress could not have intended to authorize wrongful-levy suits concerning property seized abroad— which the Government categorically regards as property that was abroad "at the time of levy." In the Government's view, to allow suits to recover property seized abroad would require venue abroad, which is impossible.

■■■ The Government, however, cites no authority for this reading of § 1402(c). To infer a limitation of the waiver of sovereign immunity in § 7426 from a venue provision is no timid assertion. Venue provisions do not

place "absolute strictures on the court." *Leroy, supra,* 443 U.S. at 180, 99 S.Ct. at 2714. In contrast to subject-matter jurisdiction, venue is not a fundamental preliminary consideration. *Id.* Instead, it is merely a defendant's "personal privilege." *Id.*

Moreover, to equate "levy" with "seizure" under § 1402 is no more justified than to do so under § 7426. Both provisions were enacted in the 1966 Tax Lien Act. Congress presumably used the term "levy" consistently throughout that Act. Therefore, in both § 1402(c) and § 7426, the term levy encompasses the entire process of forcibly collecting a tax debt.

Consequently, "time of levy" is not synonymous with time of *seizure.* Instead, the "time of levy" appears to begin when the Government seeks a treaty partner's assistance and end when the Government collects its money from that treaty partner. Venue, therefore, might lie where the United States performs these acts, and not merely where the property was seized. *See* 28 U.S.C. § 1402(c).

I do not purport to interpret § 1402(c) definitively, however. Lack of a venue dispute here renders that unnecessary. The point is simply that it is possible that § 1402(c) provides proper venue even for a wrongful-levy suit that involves property seized abroad. Accordingly, nothing in § 1402(c) compels the conclusion that Congress intended to limit the waiver of sovereign immunity for wrongful-levy suits expressed in § 7426.

### C. *Conclusion*

Section 7426 grants judicial review to citizens who allege that the Government wrongfully used their property to satisfy a third party's tax debt. A suit against the United States to recover for a wrongful levy can be maintained without regard to where the property was located or who seized the property. Provisions relating to venue likewise impose no absolute limitation on the ability to sue for an allegedly wrongful levy on overseas assets. Plaintiffs allege that the United States wrongfully caused another state to seize their property to satisfy a third party's debt. This allegation of a wrongful "levy" by

the United States states a claim under § 7426, and thereby subjects the United States to plaintiffs' suit.

II. *Act-of-state doctrine*

The Government also argues that the act-of-state doctrine requires dismissal of plaintiffs' complaint. The act-of-state doctrine precludes United States courts from reviewing the acts of foreign sovereigns. *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 405, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990). Therefore, if plaintiffs' complaint challenged seizure by the *Netherlands* and sale of the contents of the safe deposit box, this court could not adjudicate plaintiffs' claim.

Plaintiffs' complaint, the Government contends, necessarily challenges an act of the Netherlands (Doc. 39 at 14). Plaintiffs, however, "merely seek to establish their right to the return of [the] proceeds" received from the Dutch authorities. In doing so, they are challenging the conduct and entitlement of American officials, not those of their Dutch counterparts. The act-of-state doctrine "does not apply to challenges in courts in the United States to the validity or legality of acts of the United States government." Restatement (Third) of the Foreign Relations Law of the United States § 443, comm. a (1987). "Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine." *W.S. Kirkpatrick, supra,* at 406, 110 S.Ct. at 704.

The outcome of this suit does not depend on the legality of Dutch acts. Because the United States's alleged acts were by themselves a levy, plaintiffs have stated a § 7426 claim without regard to Dutch acts. Therefore, the act-of-state doctrine is not applicable, and plaintiffs' suit is justiciable.

For these reasons, it is

**ORDERED THAT** the United States' motion to dismiss is denied.

**So ordered.**